No. 14-2266

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

QUINTERO COMMUNITY ASSOC., et al.,

Plaintiffs-Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR HILLCREST BANK, et al.

Defendants-Appellees.

_____

Appeal from the United States District Court for the Western District of Missouri
Case No. 4:11-CV-00893-DGK
The Honorable David Gregory Kays, United States District Judge

_____

**BRIEF OF APPELLEES**

_____

Scott A. Wissel, MO Bar #49085
LEWIS, RICE & FINGERSH, L.C.
1010 Walnut, Suite 500
Kansas City, MO 64106
(816) 421-2500

ATTORNEYS FOR APPELLEES WHEELER,
ASNER, BLITT, CAMPBELL, J. FINGERSH, P.
FINGERSH, WHITE, DEGEN, GERVY,
RICHARDS, DAVIES, LIEBERMAN, FORGEY,
DAVIS, HOLDEMAN, SCHWARTZKOPF,
GALLATIN**,** SCHNEIDER, and HILLCREST
BANCSHARES, INC.

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Appellants Quintero Community Association, Inc. ("QCA"), Lyle Phillips, Peggy Phillips, Philips Upham II, Sondra Upham, Nowell Upham, Britton Upham, Tory Upham, Kenneth Nichols, George Benz, Karen Benz, George Benz and Sons, LLC, Theodore Benz, George Benz, Larry Hilcher, David Ostermeyer, and Cathleen Ostermeyer ("Plaintiffs") appeal the United States District Court for the Western District of Missouri's December 6, 2011, order denying Plaintiffs' motion to remand, and the District Court's January 3, 2013, order partially granting the motions to dismiss filed by Appellees Jon Forgey, Jeffrey Wheeler, Nicole Davis, Wanda Holdeman, Dan Schwartzkopf, Scott Asner, Irwin Blitt, Robert Campbell, Jack Fingersh, Paul Fingersh, Sue Gallatin, Gerald White, G. Richard Degen, Tim Gervy, Joel Richards, Thomas Davies, George Lieberman, Brian Schneider, Hillcrest Bancshares (the "Hillcrest Defendants"), and the Federal Deposit Insurance Corporation as Receiver for Hillcrest Bank (the "FDIC").

Plaintiffs argue that the FDIC's removal of this case was untimely despite the fact that it removed the case within 90 days of the District Court's order substituting the FDIC as a party to this action, as required by 12 U.S.C. § 1819(b)(2)(B). Plaintiffs further argue that they stated claims under each of the counts the District Court dismissed. The Hillcrest Defendants agree with the District Court that the removal was timely and that Plaintiffs' attempted claims

i

were vague and ambiguous and lacked factual support for the necessary elements of each claim.

The Hillcrest Defendants do not oppose Plaintiffs' request for 15 minutes of oral argument per side.

Appellate Case: 14-2266     Page: 3     Date Filed: 11/12/2014 Entry ID: 4215492

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ......... i

TABLE OF CONTENTS ................................................................................ iii

TABLE OF AUTHORITIES ..................................................................... vii

STATEMENT OF THE ISSUES .................................................................. 1

STATEMENT OF THE CASE ...................................................................... 2

    I.    RELEVANT FACTS ......................................................................... 2

    II.    PROCEDURAL HISTORY ............................................................. 5

SUMMARY OF THE ARGUMENT ............................................................ 7

ARGUMENT ............................................................................................. 8

    I.    THE DISTRICT COURT PROPERLY DENIED PLAINTIFFS'
    MOTION TO REMAND BECAUSE THE FDIC'S REMOVAL WAS
    TIMELY UNDER 12 U.S.C. § 1819(b)(2)(B) ......................................... 8

        A. Standard of Review and Burden of Proof ................................. 9

        B. Under the plain language of 12 U.S.C. § 1819(b)(2)(B), a removal filed
        by the FDIC is timely, so long as it is filed within 90 days of the order
        substituting the FDIC as a party ............................................... 10

        C. Congress's intent in enacting 12 U.S.C. § 1819(b)(2) was to grant the
        FDIC broad removal powers ................................................... 11

        D. The issue of when it becomes proper for the FDIC or another party to
        remove a case is not an issue in this litigation ......................... 12

        E. Plaintiffs' claim that there are many different dates when the removal
        period could open highlights the flaw in their suggested interpretation of
        the statute ............................................................................... 15

Appellate Case: 14-2266    Page: 4    Date Filed: 11/12/2014 Entry ID: 4215492

F. A proposal for maximizing the FDIC's ability to remove, while retaining the certainty of the deadline for removal under §1819(b)(2)(B)............20

II. THE DISTRICT COURT CORRECTLY DISMISSED THE MAJORITY OF PLAINTIFFS' CLAIMS AGAINST THE HILLCREST DEFENDANTS FOR FAILURE TO STATE A CLAIM ....................22

A. Standard of Review .................................................................26

B. Choice of Law .......................................................................26

C. The petition suffers from four overarching deficiencies precluding any viable claim against the Hillcrest Defendants .......................................27

   1. Plaintiffs failed to plead allegations of fraud with particularity in accordance with Fed. R. Civ. P. 9 ......................................................28

   2. Plaintiffs failed to plead facts demonstrating that Hillcrest wrongfully cancelled certain letters of credit ........................................................31

   3. Plaintiffs failed to plead facts demonstrating that the Hillcrest Defendants could be personally liable to Plaintiffs for their claims ...............................................................................32

   4. Plaintiffs failed to allege that Hillcrest owed them any duty of care .......................................................................................36

D. Each of Plaintiffs' individual counts against the Hillcrest Defendants failed to state a claim .............................................................38

   1. Count 1 .........................................................................38

      a. Consumer Protection, Invasion of Privacy, and Breach of Confidences .................................................................39

      b. 15 U.S.C. §§ 6801, 6805(b), 12 U.S.C. § 1831p-1, and 12 C.F.R. Parts 332 and 364 .......................................................39

      c. 18 U.S.C. § 1030(a).......................................................40

Appellate Case: 14-2266    Page: 5    Date Filed: 11/12/2014 Entry ID: 4215492

d. Breach of contract and breach of implied contract ......................40

e. Breach of fiduciary duty ................................................................41

2. Count 2 ..................................................................................................41

a. Plaintiffs failed to plead intentional interference causing a breach…………………………………………………………….42

b. Plaintiffs failed to plead how they were damaged by the alleged interference ....................................................................................44

c. Plaintiffs failed to plead that the Hillcrest Defendants employed improper means ............................................................................45

3. Count 3 ..................................................................................................46

4. Count 4 ..................................................................................................47

a. Plaintiffs failed to specify and sufficiently plead the underlying torts with which the Hillcrest Defendants are alleged to have assisted ............................................................................................48

b. Plaintiffs failed to plead facts establishing that the Hillcrest Defendants had knowledge of McClung's alleged torts ..............50

c. Plaintiffs failed to plead facts establishing how the Hillcrest Defendants provided substantial assistance to any alleged tort committed by McClung ..................................................................51

5. Count 5 ..................................................................................................52

6. Count 6 ..................................................................................................53

7. Count 7 ..................................................................................................55

8. Count 8 ..................................................................................................56

9. Count 9 ..................................................................................................58

v

10. Count 16 ............................................................................59

E. The District Court properly granted summary judgment on the conversion claim against the Hillcrest Defendants ................................59

CONCLUSION ......................................................................................62

Appellate Case: 14-2266     Page: 7     Date Filed: 11/12/2014 Entry ID: 4215492

# TABLE OF AUTHORITIES

## Cases

*Adair v. Lease Partners, Inc.*, 587 F.3d 238 (5th Cir. 2009)............................12, 20

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................26

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008).....................................26, 34

*Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241 (Kan. 2005)...................55, 60

*Buczkowski v. FDIC*, 415 F.3d 594 (7th Cir. 2005) ........................................11

*Castleberry v. Goldome Credit Corp.*, 408 F.3d 733 (11th Cir. 2005).................10

*Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 437 U.S. 837 (1984) ....................................................................................................12

*Dawson v. Withycombe,* 163 P.3d 1034 (Ariz. Ct. App. 2007) ..... 28, 33, 50-51, 54

*Diaz v. McAllen State Bank*, 975 F.2d 1145 (5th Cir. 1992) ..........................11, 15

*Farmers State Bank v. FFP Operating Partners, L.P.*, 935 P.2d 233 (Kan. Ct. App. 1997).................................................................................60

*F.D.I.C. v. North Savannah Properties, LLC*, 686 F.3d 1254 (11th Cir. 2012) ...................................................................................... 14, 16-18

*Garrett v. McDonald's Corp.*, No. CV05-004TUC-FRZ(HCE), 2006 WL 839151 (D. Ariz. 2006) ................................................................................34

*Gilmor v. Preferred Credit Corp.*, No. 10-0189-CV-W-ODS, 2010 WL 1693034 (W.D. Mo. Apr. 27, 2010) ................................................................16

*Hargis v. Access Capital Funding, LLC*, 674 F.3d 783 (8th Cir. 2012)...............10

*In re Baycol Prods. Litig.*, 732 F.3d 869 (8th Cir. 2013) .....................................26

Appellate Case: 14-2266    Page: 8    Date Filed: 11/12/2014 Entry ID: 4215492

*Jabczenski v. Southern Pac. Mem'l Hosps., Inc.*,
579 P.2d 53 (Ariz. Ct. App. 1978)................................................................ 33-35, 57

*Kesselman v. Nat'l Bank of Ariz.*, 937 P.2d 341 (Ariz. Ct. App. 1997) ...............36

*Lagen v. Balcor Co.*, 653 N.E.2d 968 (Ill. Ct. App. 1995)...................................49

*Maganas v. Northroup*, 663 P.2d 565 (Ariz. 1983)...............................................37

*Moeller v. Kain*, No. 98,531, 2008 WL 4416042 (Kan. Ct. App. 2008)..............61

*Near v. Crivello*, 673 F. Supp. 2d 1265 (D. Kan. 2009).......................................60

*Phipps v. FDIC*, 417 F.3d 1006 (8th Cir. 2005) ...................................................15

*Planned Parenthood Minn., N.D., S.D. v. Rounds*, 686 F.3d 889
(8th Cir. 2012)...........................................................................................................10

*Public Water Supply Dist. No. 3 of Laclede County, Mo. v.
City of Lebanon, Mo.*, 605 F.3d 511 (8th Cir. 2010) .............................................24

*Reding v. FDIC*, 942 F.2d 1254 (8th Cir. 1991)...............................................10, 12

*United States v. Smith*, 756 F.3d 1070 (8th Cir. 2014)..........................................10

*Urias v. PCS Health Sys., Inc.*, 118 P.3d 29 (Ariz. Ct. App. 2005) ............... 37-38

*Van Weelden v. Hillcrest Bank*, No. 2:10-CV-01833-PHX-JAT, 2011 WL 772522
(D. Ariz. Feb. 28, 2011).......................................................... 29, 32, 42-45, 49, 53

*VIP Mortgage Corp. v. Bank of America, N.A.*, 769 F. Supp. 2d 20
(D. Mass. 2011).........................................................................................................36

*Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No.
395 Pension Fund*, 38 P.3d 12 (Ariz. banc 2002).......................... 29, 42, 47, 52-53

## Statutes, Regulations, and Rules

12 C.F.R. Part 332 ..................................................................................................39

Appellate Case: 14-2266     Page: 9     Date Filed: 11/12/2014 Entry ID: 4215492

12 C.F.R. Part 364 ......................................................................... 39-40

12 U.S.C. § 1819(b)(2)(A) .............................................................. 11-12

12 U.S.C. § 1819(b)(2)(B) ..........................................................8, 10, 13

12 U.S.C. § 1831p-1 ....................................................................... 39-40

15 U.S.C. § 6801 ...................................................................................39

15 U.S.C. § 6805 ........................................................................... 39-40

18 U.S.C. § 1030 ..................................................................................40

Ariz. Admin. Code § R4-28-A1211(B)(2)(c) ....................................31

Ariz. Rev. Stat. § 12-542(5) ...............................................................56

Ariz. Rev. Stat. § 44-1522 ..................................................................58

Ariz. Rev. Stat. § 44-1991(A) .............................................................54

Fed. R. Civ. P. 8 ..................................................................................28

Fed. R. Civ. P. 9 ..................................................................................28

K.S.A. 60-513(a)(2) ............................................................................56

Missouri Supreme Court Rule 52.13 ..................................................13

## Other Authorities

4B AM. JUR. 2D, § 13 (2007) ..............................................................43

3A Fletcher Cyc. Corp. § 1137 ...........................................................57

Appellate Case: 14-2266    Page: 10    Date Filed: 11/12/2014 Entry ID: 4215492

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in denying Plaintiffs' motion to remand this case to state court when the FDIC filed its notice of removal within 90 days after the state court order substituting it as a party as required by 12 U.S.C. § 1819(b)(2)(B).

- *Buczkowski v. FDIC,* 415 F.3d 594 (7th Cir. 2005).

- *Diaz v. McAllen State Bank*, 975 F.2d 1145 (5th Cir. 1992).

- *Reding v. FDIC*, 942 F.2d 1254 (8th Cir. 1991).

- *Adair v. Lease Partners, Inc.*, 587 F.3d 238 (5th Cir. 2009).


2.     Whether the District Court erred in granting the Hillcrest Defendants' motion to dismiss as to all but one of Plaintiffs' attempted claims because Plaintiffs' Petition was vague, confusing, and failed to allege factual support for the required elements of Plaintiffs' named causes of action, such that Plaintiffs failed to state plausible claims.

- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008).

- *Dawson v. Withycombe,* 163 P.3d 1034 (Ariz. Ct. App. 2007).

- *Urias v. PCS Health Sys., Inc.*, 118 P.3d 29 (Ariz. Ct. App. 2005).

Appellate Case: 14-2266     Page: 11     Date Filed: 11/12/2014 Entry ID: 4215492

## STATEMENT OF THE CASE

## I.     RELEVANT FACTS

Plaintiffs' Statement of Facts consists of a wholesale reproduction of most of the 340 numbered paragraphs contained in their "Omnibus Petition." The Hillcrest Defendants do not dispute that these are the contents of the pleading before the Court. The Hillcrest Defendants note, however, that Plaintiffs' narrative largely consists of vague and indefinite assertions, speculative allegations, legal conclusions, and argument, such that it cannot be accurately considered a statement of the facts of this case. The following facts are undisputed:

This case involves the development of the Quintero Golf and Country Club ("Quintero") in Peoria, Arizona, and Quintero's principal developer Gary McClung ("McClung"). In addition to a golf course, the Quintero development included the construction of a residential subdivision. (Vol. 2, A0465, ¶¶ 40-41). QCA is the non-profit homeowners' association for that subdivision. (Vol. 2, A0460, ¶¶ 3-4). Aside from QCA, the Plaintiffs are individuals who between 1999 and 2008 invested in Quintero by purchasing "Revenue Producing Membership Collateral Certificates and Agreements" or otherwise loaning money to McClung. (*See generally* Vol. 2, A0470-76).

Sometime during 2004, McClung began negotiating with Kansas-based Hillcrest Bank ("Hillcrest") for a loan to support Quintero's construction of

- 2 -

residential improvements. (Vol. 2, A0466, ¶¶ 47). The Hillcrest Defendants were among Hillcrest's directors and officers and, in the case of Hillcrest Bancshares, the bank holding company owning all of Hillcrest's stock. (Vol. 2, A0460-62, ¶¶ 5, 8-25). On March 8, 2005, Hillcrest finalized a loan to Quintero in the amount of $31,000,000.00. (Vol. 2, A0467, ¶ 56). As a part of the transaction, Hillcrest and Quintero executed several irrevocable letters of credit naming QCA as a beneficiary. (Vol. 2, A0468, ¶ 64). As construction proceeded, Quintero submitted draws against the letters of credit to pay its vendors and contractors for work completed. (Vol. 2, A0469, ¶ 65). Quintero submitted its draws to a third party named Project Disbursement Group ("PDG"), which then verified completion of the construction and presented the draw to Hillcrest for release of the funds. (Vol. 2, A0468, ¶¶ 61-63). As beneficiary, QCA had the right to request the money remaining under each letter of credit from Hillcrest in the event Quintero abandoned construction of the improvements to which a given letter of credit related.

At some point – though the details are not specified in Plaintiffs' Petition – the Quintero development and McClung's personal financial situation went south. The Arizona Department of Real Estate suspended the public report for the Quintero development on or about March 31, 2010 as a result of Quintero's failure to complete required infrastructure. (Vol. 2, A0488, ¶ 145). Both the Plaintiffs

- 3 -

and Hillcrest allege that they lost some or all of the money they loaned to Quintero and McClung.

Plaintiffs' Petition also dedicates one count – brought by QCA only – to an event unrelated to the Quintero development. On October 22, 2010, the Office of the State Bank Commissioner of Kansas issued an order closing Hillcrest and appointing the FDIC as Hillcrest's receiver. (Vol. 1, A0001, ¶ 3). Shortly before this action, in September 2010, some of the Hillcrest Defendants retained attorneys from the Atlanta office of Bryan Cave LLP to advise the client group on any director and officer liability issues that might arise upon Hillcrest's closing. (Vol. 3, A1014, ¶ 1). In October 2010, the Hillcrest client group caused a number of Hillcrest's electronic bank records to be copied to a portable hard drive and electronic storage discs, which were then sent to the Bryan Cave attorneys. (Vol. 3, A1014-15, ¶ 4). No original records were removed from Hillcrest. (Vol. 3, A1015, ¶ 8). When the FDIC was appointed as Hillcrest's receiver, the FDIC demanded that Bryan Cave return the copied records to the FDIC's possession. The FDIC filed a lawsuit against Bryan Cave, which the parties eventually settled when Bryan Cave agreed to return the copied documents to the FDIC. (Vol. 3, A1020). During discovery in this case, QCA failed to identify any evidence that any of the copied records contained confidential information related to QCA. (*See* Vol. 3, A1016, ¶ 11).

Appellate Case: 14-2266    Page: 14    Date Filed: 11/12/2014 Entry ID: 4215492

## II.    PROCEDURAL HISTORY

Plaintiffs originally filed this case against Hillcrest only on May 3, 2010, in the Circuit Court of Jackson County, Missouri.  (Vol. 1, A0001, ¶ 2).  After Hillcrest was closed, Plaintiffs filed a separate state court case against the Hillcrest Defendants and several of McClung's entities on January 4, 2011.  (Vol. 1, A00071).  On April 21, 2011, the state court issued an order consolidating the two cases.  (Vol. 1, A0038).

After its closing, Hillcrest filed a motion to substitute the FDIC as the proper defendant on February 28, 2011.  (Vol. 1, A0030).  The state court granted the motion on March 1, 2010.  (Vol. 1, A0036).  On May 7, 2011, Plaintiffs filed a motion to vacate the state court's substitution of the FDIC on the basis that Hillcrest's motion to substitute did not comply with Missouri procedural rules. (Vol. 1, A0039).    On May 12, 2011, the state court granted Plaintiffs' motion and vacated its order substituting the FDIC for Hillcrest.  (Vol. 1, A0041).  After Plaintiffs filed a motion for default judgment against Hillcrest on May 25, 2011, the FDIC filed a new motion to substitute itself for Hillcrest on May 27, 2011. (Vol. 1, A0045).  On June 9, 2011, the state court granted the FDIC's motion to substitute.  (Vol. 1, A0056).

Meanwhile, on March 11, 2011, the Hillcrest Defendants filed motions to dismiss their state court case for failure to state a claim and, in the alternative,

Appellate Case: 14-2266    Page: 15    Date Filed: 11/12/2014 Entry ID: 4215492

motions for a more definite statement. (Vol. 1, A0197-239). On September 1, 2011, the state court issued an order granting the Hillcrest Defendants' motions for a more definite statement. (Vol. 1, A0341). Plaintiffs did not file an amended petition in the state court prior to removal.

The FDIC filed its notice of removal and removed this case to the District Court on September 6, 2011. (Vol. 1, A0001). Plaintiffs sought to remand the case to the state court on the grounds that the FDIC's removal was not timely, but the District Court denied Plaintiffs' motion to remand on December 6, 2011. (Vol. 1, A0058, A0374). With the Plaintiffs having filed no amended petition, the Hillcrest Defendants again moved to dismiss Plaintiffs' Petition and, in the alternative, for a more definite statement. (Vol. 1, A0378). On May 18, 2012, the District Court granted the Hillcrest Defendants' motion for a more definite statement. (Vol. 2, A0452).

On June 12, 2012, Plaintiffs filed their "Omnibus Petition," which included their claims against both the Hillcrest Defendants and the FIDC as receiver for Hillcrest. (Vol. 2, A0458). Again, the Hillcrest Defendants and the FDIC moved to dismiss the Petition for failure to state a claim. (Vol. 2, A0530, A0545). On January 3, 2013, the District Court issued an order dismissing all but two of Plaintiffs' claims: a conversion claim against the Hillcrest Defendants related to

Appellate Case: 14-2266    Page: 16    Date Filed: 11/12/2014 Entry ID: 4215492

the copied bank records, and a breach of contract claim against the FDIC. (Vol. 3, A0960; Add., 5).

The case proceeded on the two remaining claims through discovery. On December 13, 2013, the Hillcrest Defendants filed a motion for summary judgment on the conversion claim. (Vol. 3, A1003). Three days later, the FDIC filed a motion to dismiss for lack of subject matter jurisdiction based on the doctrine of prudential mootness. (Vol. 3, A1007). The District Court granted the FDIC's motion to dismiss on April 29, 2014, and granted summary judgment to the Hillcrest Defendants on May 2, 2014. (Vol. 4, A1649, A1661).

## SUMMARY OF THE ARGUMENT

The District Court correctly ruled that the FDIC's removal of this case was timely under 12 U.S.C. § 1819(b)(2)(B). That statute plainly states the FDIC may remove any case to federal court before the end of 90 days from the date the FDIC is substituted as a party. The state court's order substituting the FDIC for Hillcrest was issued on June 9, 2011, and the FDIC removed the case 89 days after that date, on September 6, 2011. Plaintiffs' argument that the 90-day statutory period began to run from one of five earlier dates is contrary to the plain language of the statute and to Congress's intent to give the FDIC broad power to remove cases to federal court.

Appellate Case: 14-2266    Page: 17    Date Filed: 11/12/2014 Entry ID: 4215492

The District Court was also correct in dismissing all but one of Plaintiffs' claims against the Hillcrest Defendants. The Omnibus Petition, which the District court noted was "incredibly difficult" to understand, failed to articulate logical connections between vague factual allegations or to plead allegations fulfilling the requisite elements of each of their claims. Moreover, the claims each suffered from overarching analytical deficiencies, including the failure to establish that the Hillcrest Defendants could be individually liable for the alleged wrongs or that the Hillcrest Defendants owed a duty to the Plaintiffs. Plaintiffs' attempt to argue that they pleaded plausible claims does nothing to relieve the confusing nature of the allegations. Plaintiffs cannot substitute aggressive rhetoric and outright speculation for the necessary factual allegations, which the District Court correctly found lacking.

## **ARGUMENT**

**I. THE DISTRICT COURT PROPERLY DENIED PLAINTIFFS' MOTION TO REMAND BECAUSE THE FDIC'S REMOVAL WAS TIMELY UNDER 12 U.S.C. § 1819(b)(2)(B).**

When the FDIC removed this action to federal court, it was exercising the broad removal power Congress granted it in 12 U.S.C. § 1819(b)(2)(B):

> the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court **before the end of the 90-day period beginning on the date** the action, suit, or proceeding is filed against the Corporation or **the Corporation is substituted as a party**. (emphasis added).

- 8 -

It is undisputed that the state court entered an order granting the FDIC's motion for substitution on June 9, 2011, that the FDIC filed its notice of removal on September 6, 2011 (the 89th day after the order), and that removal occurred before the end of the 90-day period beginning on the date of the state court's order substituting the FDIC for Hillcrest as a party to this action. Under a plain reading of § 1819(b)(2)(B), the FDIC's removal was therefore timely.

Plaintiffs attempt to avoid this straightforward conclusion by claiming that the 90-day deadline for removal starts on some date other than the date "the Corporation is substituted as a party," as specified in the statute. Plaintiffs have asked this Court to select either the date of the previous substitution order (that had been vacated at the request of Plaintiffs) or, perhaps, some date upon which the FDIC filed any pleading in the state court. Plaintiffs misinterpret and misapply the relevant case law in their effort to get this Court to limit the FDIC's ability to remove. This effort by Plaintiffs is contrary to both the plain language of the statute and Congress's stated intent to grant the FDIC broad removal power. The Court should affirm the District Court's order denying Plaintiffs' motion to remand.

### A. Standard of Review and Burden of Proof

The Hillcrest Defendants agree with Plaintiffs that this Court's review of the interpretation of a statute and the propriety of the exercise of removal jurisdiction

Appellate Case: 14-2266    Page: 19    Date Filed: 11/12/2014 Entry ID: 4215492

are both *de novo*. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 686 F.3d 889, 893 (8th Cir. 2012); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012).

However, the burden of proving lack of jurisdiction rests solely on Plaintiffs as the parties opposing removal. *See Castleberry v. Goldome Credit Corp.*, 408 F.3d 733, 785 (11th Cir. 2005). In the context of removal under Section 1819(b)(2), it is the party objecting to removal who bears the burden of proving that the three prongs of the Section 1819(b)(2)(D) exception are satisfied. *See Reding v. FDIC*, 942 F.2d 1254, 1258 (8th Cir. 1991).

**B. Under the plain language of 12 U.S.C. § 1819(b)(2)(B), a removal filed by the FDIC is timely, so long as it is filed within 90 days of the order substituting the FDIC as a party.**

Pursuant to 12 U.S.C. § 1819(b)(2)(B), the FDIC "may . . . remove any action . . . before the end of the 90-day period beginning on the date the . . . the Corporation is substituted as a party." When interpreting a statutory provision like the one at issue, the Court must first look to the language used in the statute, giving the words their ordinary, contemporary, common meaning unless otherwise defined in the statute. *See United States v. Smith*, 756 F.3d 1070, 1073 (8th Cir. 2014). If ever there was an ordinary meaning in a statute, this is it. The beauty of this language is its simplicity <u>and</u> the fact that it uses as the start of its calculation a

- 10 -

very specific action in the state court – the date the FDIC "is substituted as a party."

Though this Court does not appear to have discussed the plain meaning of these words, other circuits have. *See Buczkowski v. FDIC,* 415 F.3d 594, 596 (7th Cir. 2005) ("Substitution 'as a party' must mean 'as a party to the litigation.'"). Plaintiffs have cited *Buczkowski* as among the "most apposite" on this issue. *See also Diaz v. McAllen State Bank*, 975 F.2d 1145, 1147 (5th Cir. 1992) ("This provision also makes it clear that the time period begins to run from the date the FDIC 'is substituted as a party' (i.e. intervenes).").

### C. Congress's intent in enacting 12 U.S.C. § 1819(b)(2) was to grant the FDIC broad removal powers.

If the Court finds any ambiguity in the plain meaning of the words "before the end of the 90 day period beginning on the date . . . the Corporation is substituted as a party," it should consider those words through the lens of the clearly-expressed intentions of Congress in enacting the statute at issue and give them a meaning consistent with that intention.

In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), which included 12 U.S.C. § 1819(b)(2). In addition to the remand procedure outlined in § 1819(b)(2)(B), the statute provides that "all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of

- 11 -

the United States." 12 U.S.C. § 1819(b)(2)(A). In interpreting these provisions, this Court has noted the importance of "preserving Congress' overall desire 'that cases involving FDIC should generally be heard and decided by federal courts.'" *Reding v. FDIC*, 942 F.2d at 1259 (quoting *Kirkbride v. Continental Cas. Co.*, 933 F.2d 729 (9th Cir. 1991)). *See also Adair v. Lease Partners, Inc.*, 587 F.3d 238, 242 (5th Cir. 2009) ("in enacting FIRREA, 'Congress used very strong language to afford the FDIC every possibility of having a federal forum within the limits of Article III.'").

"If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 437 U.S. 837, 843 n.9 (1984). Given the wide recognition in this Court and others that Congress has expressed a clear intention for the FDIC to litigate in federal courts, the Court's interpretation of § 1819(b)(2)(B) should aim to give effect to this intent.

### D. The issue of when it becomes proper for the FDIC or another party to remove a case is not an issue in this litigation.

In their effort to change the plain meaning of 12 U.S.C. § 1819, Plaintiffs refer this Court exclusively to cases in which the issue was whether it was proper for either the FDIC or another party to the litigation to remove a case prior to the date upon which an order substituting the FDIC as a party was entered. Before

- 12 -

addressing those cases, a brief review of the precise language of the statute is in order:

> (T)he Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court **before the end of the 90-day period beginning on the date . . . the Corporation is substituted as a party**.

12 U.S.C. § 1819(b)(2)(B)(emphasis added). The only date which is <u>explicitly</u> stated in the statute is the date upon which <u>the window closes</u> for the FDIC to remove. That is the sole issue of this point of the appeal – did the FDIC file its removal before the window closed? Here, as a matter of Missouri law, the FDIC was not "substituted as a party" until the date the state court entered its order of substitution, so the window closed 90 days after that date. *See generally* Missouri Supreme Court Rule 52.13 (stating that the court "may order" substitution upon motion and notice).

Specifically, then, the Hillcrest Defendants suggest that the language quoted above does not address the issue of whether, and under what circumstances it might be proper for the FDIC to remove a case before it is substituted as a party in accordance with the procedures of the state in which the case is pending. The statute does not state that the removal must take place "during" or "within" this 90-day period. It only states that the removal must take place "before the end" of the 90-day period. To be fair, one could conclude that the statute implies that removals should generally take place during the 90-day period, simply by using the

- 13 -

phrase "90-day period."  Moreover, as a general rule, one has to be a "party" to a

lawsuit, before one can remove it.   And the Federal Rules, generally, utilize

timeframes for removal as having an identifiable beginning and corresponding end

dates.  Nevertheless, the simple point here is that 12 U.S.C. § 1819(b)(2)(B) does

not state that it would never be proper for the FDIC to remove a case before it is

properly substituted as a party in accordance with state court procedures.   The

Hillcrest Defendants, therefore, submit that ancillary questions about when the

window opens for the FDIC to remove are best left to a case where that issue is

squarely before the court.  Those issues include, but are not necessarily limited to:

   a.  Can the FDIC remove a case from a Missouri state court before an order
       of substitution is entered?

   b.  Can the FDIC file a "notice of substitution" rather than a motion for
       substitution (as in this case) and thereby open the removal window?
       And, if it does so, will that close the window 90 days later, as suggested
       in *F.D.I.C. v. North Savannah Properties, LLC*, 686 F.3d 1254 (11th Cir.
       2012), discussed below.

   c.  Can the FDIC be viewed as a "party" for federal procedure purposes (as
       would permit it to remove a case in good faith), if a state court is abusing
       its power by delaying or refusing to enter an order of substitution?

As noted above, Plaintiffs primarily rely upon authorities addressing when "the

window opens" for the FDIC or another party to remove and using that new

"opening" date to set a corresponding closing date which is 90 days later.   But

Plaintiffs fail to acknowledge that these authorities are concerned with the

existence of subject matter jurisdiction rather than the procedure by which the

- 14 -

FDIC may seek removal. These are entirely different concepts. *See, e.g.*, *Diaz*, 975 F.2d at 1148 (noting the difference between a lack of subject matter jurisdiction and a defect in removal procedure). For example, the footnote Plaintiffs cite from this Court's opinion in *Phipps v. FDIC* merely recognizes that subject matter jurisdiction exists for any party to seek removal when the FDIC becomes the receiver for a party to the case pursuant to § 1819(b)(2)(A). 417 F.3d 1006, 1009 n.2 (8th Cir. 2005). *Phipps* does not address the removal procedure and time limits under § 1819(b)(2)(B). The Hillcrest Defendants do not dispute that subject matter jurisdiction exists in a case when the FDIC is appointed the receiver for one of the parties, but that does not mean that the time limitation for the FDIC to remove the case instantly begins to run.

### E. Plaintiffs' claim that there are many different dates when the removal period could open highlights the flaw in their suggested interpretation of the statute.

The biggest flaw in plaintiffs' attempt to reword the statute is highlighted by Plaintiffs' own ability to pick numerous "window closing" dates, simply by picking an opportune "window opening" date and counting 90 days. Their claims require this Court to (a) address issues of when the window might open in a particular case, not presented in this appeal, (b) interpret the statute to only permit the FDIC to remove cases "within" a specific 90-day window and (c) pick a date other than that specified by the statute.

- 15 -

Plaintiffs' <u>first</u> assert that the FDIC's window for removal opened on *the date Hillcrest first made the state court aware that the FDIC was appointed as its receiver*. (Appellants' Br., 19-20). Plaintiffs' sole citation in support of this date is an unpublished case from the Western District of Missouri. *Gilmor v. Preferred Credit Corp.*, discussed whether subject matter jurisdiction existed for a party other than the FDIC to remove the case when that party presented the court with evidence of the FDIC receivership. *See* No. 10-0189-CV-W-ODS, 2010 WL 1693034 at *2 (W.D. Mo. Apr. 27, 2010). *Gilmor* did <u>not</u> analyze when the time for the FDIC to seek removal in such a case ends.

<u>Second</u>, Plaintiffs assert the additional theory that the limitation period for the FDIC to remove this case began to run *when the FDIC began "participating in the case"* by filing its entry of appearance, motion for substitution, and/or opposition to Plaintiff's motion for default judgment against Hillcrest. In making their argument, Plaintiffs mistakenly rely on *F.D.I.C. v. North Savannah Properties, LLC*, a case in which North Savannah Properties opposed removal by the FDIC, claiming the removal occurred before the FDIC had been substituted as a party. 686 F.3d at 1257. The Eleventh Circuit held that the FDIC could remove the case after it filed a "notice of substitution." *Id.* at 1260. A critical distinction between *North Savannah* and the present case is that in *North Savannah* the FDIC did not move the state court for an order of substitution. Instead, the FDIC in

Appellate Case: 14-2266     Page: 26     Date Filed: 11/12/2014 Entry ID: 4215492

*North Savannah* filed a "notice of substitution," by which the FDIC simply advised the state court that it had stepped into the shoes of the failed institution. *Id.* at 1257. Given the use of this procedural mechanism, the Eleventh Circuit opined:

> As we see it, by virtue of § 1821(d)(2)(A)(i) the FDIC is automatically substituted for the failed institution as a matter of federal law the moment that it files a notice of substitution in court, and the 90–day removal period set forth in § 1819(b)(2)(B) begins to run from the filing of that notice.

*Id.* at 1260.

Regardless of whether a "*notice* of substitution" would be recognized as a permissible filing by this Court or the State of Missouri, it is clear that such a filing is fundamentally different from a *motion* for substitution like the one the FDIC filed in this case. In their motion, the FDIC (1) made factual representations to the state court that the FDIC had been appointed receiver, and (2) asked the state court to issue an order accepting those factual representations and formally substituting the FDIC as a party. Unlike in *North Savannah*, the FDIC in this case did not presume to substitute itself for Hillcrest; it asked the state court for an order of substitution. In this scenario, the rule Plaintiffs are effectively asking the Court to adopt – that the FDIC is "substituted as a party" when it asks the state court to substitute it as a party, but before the state court actually does so – is a nonsensical reading of the FDIC's pleadings and the language of §1819(b)(2)(B). Moreover, this would extend *North Savannah* well beyond its explicit holding.

Appellate Case: 14-2266     Page: 27     Date Filed: 11/12/2014 Entry ID: 4215492

The second important distinction between this case and *North Savannah* is that the Eleventh Circuit was faced with the question of whether subject matter jurisdiction existed and the FDIC could remove <u>before</u> the state court issued an order substituting it as a party. 686 F.3d at 1256-57. The issue of when the FDIC's window to remove closes (as opposed to when it opens) was not before the Eleventh Circuit. Nevertheless, the Eleventh Circuit, in attempting to further "Congress's goal that claims asserted against the FDIC be heard and decided by the federal courts," concluded that the FDIC's removal window can be opened before a motion for substitution is granted, but, in doing so, also held that the "notice of substitution" effectively started the 90-day period, by the end of which the FDIC would be required to remove, as stated in the quote, above.

<u>Finally</u>, Plaintiffs assert that the 90-day limitation for removal began to run from the date of a previous state court order substituting the FDIC for Hillcrest upon Hillcrest's motion. Plaintiffs make this argument despite the fact that the state court vacated the previous substitution order <u>at Plaintiffs' request</u>. In this argument, Plaintiffs attempt to use their own procedural machinations to retroactively manipulate the time period for removal and suggest that the language of § 1819(b)(2)(B) does not specify that the FDIC must be "properly" substituted as a party in order for the limitation period to begin. (Appellants Br., 23). It cannot have been Congress' intent to mandate that the FDIC must remove within

- 18 -

90 days of the date that it was *improperly* substituted as a party, particularly when there is a subsequent order ruling that the FDIC is <u>not</u> a party to the litigation. The state court's March 1, 2011, order substituting the FDIC for Hillcrest became a nullity when the state court vacated that order on May 12, 2011.

Indeed, the only relevance of the state court's vacated order of substitution is that it further demonstrates that (a) any argument that the 90-day removal period begins to run upon mere filing of a motion to substitute is simply wrong, and (b) there are important reasons for a state court to not automatically accept the FDIC's motion to substitute. Other parties should have a right to oppose substitution based upon substantive or procedural grounds.

In the right future case, this Court might choose to "open the window" and permit the FDIC to remove before it has formally been substituted as a party in accordance with state court procedure. But, whether this Court would or should choose to do so should have no effect on the "window closing" date. That date has been set by statute and it is precise and specific: it is 90 days after the FDIC is formally substituted as a party in accordance with the procedures of the state court where the action is pending.

Appellate Case: 14-2266    Page: 29    Date Filed: 11/12/2014 Entry ID: 4215492

**F. A proposal for maximizing the FDIC's ability to remove, while retaining the certainty of the deadline for removal under §1819(b)(2)(B).**

While the issue of whether the FDIC can remove before it is substituted as a party pursuant to the rules of the state court is not presented by this appeal, the Hillcrest Defendants feel they would be remiss if they did not offer their view as to how one would harmonize these issues in the event the Court takes this opportunity to offer guidance to the FDIC or others as to what the rules will be on this issue in the Eighth Circuit.

The holding in *North Savannah*, though inapposite, is reasonable. Summarized, it does not address or alter the general proposition that the 90-day period starts when the FDIC is properly substituted as a party. Instead, it holds that if the FDIC chooses to file a "notice of substitution" it can make itself a "party" with standing to remove; but, doing so will also start the 90-day period on that date. While reasonable, the Hillcrest Defendants submit that such a rule creates problems of interpretation as to what is and what isn't a "notice of substitution," as demonstrated by Appellants' Brief herein. This rule may also end up creating unintended restrictions on the FDIC's ability to remove.

Instead, the Hillcrest Defendants submit that the reasonable interpretation which affords the FDIC "every possibility of having a federal forum" (*Adair*, 587 F.3d at 242) is as follows:

- 20 -

a) Subject matter jurisdiction exists under 12 U.S.C. § 1819(b)(2)(A) and the FDIC is considered a "party", with standing to remove and it or any other party may remove the case to federal court once the FDIC is appointed receiver for a party to the case (window opens). Note: Plaintiffs have suggested that it would be appropriate for the FDIC to have removed on numerous dates before it was actually substituted as a party, in accordance with Missouri Rules; and

b) Pursuant to 12 U.S.C. § 1819(b)(2)(B) the FDIC may file a notice of removal at any time before 90 days have elapsed from the date the state court issues an order substituting the FDIC as a party (window closes).

This rule is consistent with not only the statutes and case law, but also with the Congressional intent to afford the FDIC every opportunity of litigating in federal court.

This District Court's holding that removal was timely was correct, and should be affirmed. If this Court should choose in this case or in some future case to shorten the time for the FDIC to remove to some date other than 90 days after the order substituting the FDIC as a party, the Hillcrest Defendants submit that such ruling should be applied prospectively only.

Appellate Case: 14-2266    Page: 31    Date Filed: 11/12/2014 Entry ID: 4215492

## II. THE DISTRICT COURT CORRECTLY DISMISSED THE MAJORITY OF PLAINTIFFS' CLAIMS AGAINST THE HILLCREST DEFENDANTS FOR FAILURE TO STATE A CLAIM

Plaintiffs were given two shots in the District Court to come up with cognizable theories of recovery against the Hillcrest Defendants. They tried valiantly to come up with some cause of action against these Defendants, but, the fact is that there is no cognizable cause of action against Movants under these facts. Investors who lost money in a real estate development claim that the developer engaged in fraudulent activity and that, therefore, they should be able to sue not only the developer's lender, but also its officers and directors, for claimed fraudulent conduct by the developer. As discussed in detail below, Plaintiffs have not (because they cannot) pleaded any cognizable claim against any these Defendants.

The District Court's January 3, 2013 order dismissed all of Plaintiffs' claims against the Hillcrest Defendants with the exception of the conversion claim in Count I. In its order, the District Court stated that it had "thoroughly sifted through the long, rambling, and often incoherent allegations set forth in Plaintiffs' Omnibus Petition" and found that the allegations did not add up to any cognizable claim in the counts that were dismissed. (Vol. 3, A0983; Add., 28). Tellingly, the Plaintiffs' chief complaint with the District Court's analysis appears to be that the District Court was looking for "logical connections" between the allegations rather

- 22 -

than simply accepting Plaintiffs' assurances that their allegations added up to actionable claims.  (Appellants Br., i).

To be sure, this was not a situation where a trial court engaged in an overly-technical parsing of a reasonably clear pleading.  Indeed, Plaintiffs' claims as initially pleaded were "so vague and ambiguous" that the District Court granted the Hillcrest Defendants' motion for a more definite statement and ordered Plaintiffs to file an amended petition setting forth "each claim clearly and concisely, noting which allegations it brings against which Defendant and which facts support those allegations."  (Vol. 2, A0452-53).  Plaintiffs' response was to file their Omnibus Petition.

The District Court noted that it was "incredibly difficult to sift through Plaintiffs' 72 single-spaced pages and 340 numbered paragraphs to ascertain any coherent argument as to why [the defendants] are liable"  (Vol. 3, A0967; Add., 12) and stated that it was "questionable whether Plaintiffs' confusing and garbled Omnibus Petition" complied with its previous order.  (Vol. 2, A0967-68; Add., 12-13).  Nevertheless, the District Court elected to dismiss the individual counts for failing to state a claim rather than dismiss the entire Omnibus Petition on this basis.

Plaintiffs' failure to comply with the District Court's order for a more definite statement provides this Court with an alternative basis to affirm the District Court's dismissal of Plaintiffs' claims.  Regardless, the District Court's

- 23 -

acknowledgement that it could have dismissed Plaintiffs' claims on this basis but elected not to do so indicates that the District Court was effectively giving Plaintiffs the benefit of the doubt by even engaging in an analysis of the individual counts.

As found by the District Court, Plaintiffs have simply failed to articulate how the facts they have alleged meet the elements of any recognized cause of action. Plaintiffs now ask this Court to simply accept that the necessary facts for each claim have been pleaded, without identifying what those facts are. It is not the Court's responsibility to figure out which of Plaintiff's allegations are supposed to support each claim. "Judges are not like pigs, hunting for truffles buried in briefs." *Public Water Supply Dist. No. 3 of Laclede County, Mo. v. City of Lebanon, Mo.*, 605 F.3d 511, 524 (8th Cir. 2010).

When stripped of those allegations that consist entirely of speculation, conclusory statements, and argument, the relevant factual content of the Omnibus Petition is limited to the following:

1.   Plaintiffs invested with McClung;

2.   Hillcrest loaned money to McClung;

3.   Plaintiffs lost money;

4.   Hillcrest lost money;

Appellate Case: 14-2266    Page: 34    Date Filed: 11/12/2014 Entry ID: 4215492

5.      Hillcrest issued irrevocable letters of credit, which would permit QCA to demand money from Hillcrest if construction of certain improvements was not completed on time;

6.      McClung in March 2007 asked Hillcrest to cancel certain letters of credit of which QCA was a beneficiary;

7.      McClung made certain representations to certain Plaintiffs which turned out to be untrue.

In a nutshell, Plaintiffs invested money with a Hillcrest Bank loan customer, the Plaintiffs lost money, and Hillcrest's loan was not repaid. Plaintiffs then proceed to surround these facts with self-serving speculation, and unsupported argument in an attempt to portray this simple failed real estate development as a far-reaching, nefarious conspiracy by which each of the 19 Hillcrest officers and directors named in the complaint knowingly and intentionally caused Plaintiffs to lose their investments. The District Court carefully analyzed all of the counts, and correctly found that there are no factual allegations supporting key elements of Plaintiffs' attempted claims and that without these key facts, Plaintiffs failed to state plausible claims. These Defendants submit that this Court should do the same and affirm the District Court's order.

Appellate Case: 14-2266   Page: 35   Date Filed: 11/12/2014 Entry ID: 4215492

## A. Standard of Review

Plaintiffs are correct that this Court reviews the District Court's grant of a motion to dismiss *de novo*. *In re Baycol Prods. Litig.*, 732 F.3d 869, 874 (8th Cir. 2013). In order for a complaint to survive a motion to dismiss, it must include "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2008). A claim has facial plausibility when it alleges factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The factual content alleged must be sufficient to "raise a right to relief above the speculative level." *Id.* at 555. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While a district court must accept factual allegations in the Complaint as true for the purposes of a motion to dismiss, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## B. Choice of Law

In ruling on the Motion to Dismiss, the District Court declined to engage in a choice of law analysis, noting that it appeared from the relevant factors in Section 145 of the Restatement (Second) of Conflict of Laws that either Kansas or Arizona law applied to all claims, and that there was no apparent conflict between the laws

Appellate Case: 14-2266    Page: 36    Date Filed: 11/12/2014 Entry ID: 4215492

of Arizona and Kansas on the issues presented. The two exceptions were the claims in which the Plaintiffs attempted to proceed under specific Arizona statutes and claims related to the Hillcrest Defendants' alleged fiduciary duties to Hillcrest, which were governed by Kansas law because Hillcrest was a Kansas bank. (Vol. 3, A0966; Add. 11).

Subsequently, in deciding the Hillcrest Defendants' Motion for Summary Judgment, the District Court concluded that Kansas law applied to QCA's conversion claim in Count 1, as the claim involved alleged actions by a Kansas bank taking place within the state of Kansas and no other factors weighed in favor of any particular state. This same analysis should apply to Count 7, which is similarly a conversion claim alleging Hillcrest Bank's wrongful retention of money within the state of Kansas. Plaintiffs do not dispute any of the District Court's accurate choice of law analysis.

### C. The petition suffers from four overarching deficiencies precluding any viable claim against the Hillcrest Defendants.

Before discussing the deficiencies in each of the claims that Plaintiffs attempt to plead, it is important to understand that each of these counts suffers from Plaintiffs' inability to or failure to satisfy one or more of four requirements, addressed in this section.

Appellate Case: 14-2266     Page: 37     Date Filed: 11/12/2014 Entry ID: 4215492

1. <u>Plaintiffs failed to plead allegations of fraud with particularity in accordance with Fed. R. Civ. P. 9.</u>

Thirteen pages of the Omnibus Petition are devoted to listing allegedly fraudulent statements McClung made to individual Plaintiffs. (Vol. 2, A0476-A0488). The remainder of the Omnibus Petition vaguely asserts that Hillcrest and its directors and officers are somehow liable to all Plaintiffs for McClung's alleged misrepresentations. Plaintiffs' allegations do not allege fraud – or aiding and abetting fraud – with sufficient particularity to state a claim under Rule 8, much less satisfy the heightened pleading requirements of Rule 9(b). Under Arizona law, the elements of a fraud claim are: (1) a false and material representation, with knowledge of its falsity or ignorance of its truth, (2) intent that the hearer would act upon the representation in a reasonably contemplated manner, and (3) that the hearer, ignorant of the falsity of the representation, rightfully relied upon the representation and was thereby damaged. *Dawson v. Withycombe,* 163 P.3d 1034, 1046 (Ariz. Ct. App. 2007).

Plaintiffs' allegations regarding the alleged McClung statements are simply a recitation of the allegedly false communications followed by conclusory assertions that the statements therein were untrue when made. (*See, e.g.*, Vol. 2, A0483, ¶ 124 ("The above representations made by McClung were material and were known to be false or untrue by McClung or were recklessly made without knowledge concerning them.")). General denials of the truth of a statement,

- 28 -

without factual support for the statement's falsity, are insufficient to plead fraud under Rule 9. As the United States District Court for the District of Arizona recognized in dismissing nearly identical claims brought against Hillcrest by other investors in the Quintero development, "[i]t is Plaintiffs' burden to show, from these factual allegations, the specifics regarding the fraud, including *what is false or misleading about a statement, and why it is false*." *See Van Weelden v. Hillcrest Bank*, No. 2:10-CV-01833-PHX-JAT, 2011 WL 772522 at *7 (D. Ariz. Feb. 28, 2011) (emphasis added). At no point during the 13-page recitation of McClung's statements do Plaintiffs offer any facts showing why any statement made by McClung was false when made.

Moreover, the Omnibus Petition is devoid of any factual allegation showing how Hillcrest or the individual Hillcrest Defendants even could have been aware of any of the statements listed, which appear to be private communications from McClung to individual Plaintiffs. In order to aid and abet a fraudulent statement, one must be aware that a fraud was actually committed. *See Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension Fund*, 38 P.3d 12, 24 (Ariz. banc 2002). The District Court agreed that there were no factual allegations supporting Plaintiffs' contention that the Hillcrest Defendants had a "general awareness" of McClung's "fraudulent scheme." (Vol. 3, A0974; Add., 19).

- 29 -

Further, the necessary elements that McClung's statements related to material facts and that Plaintiffs reasonably relied on these statements are pleaded as mere recitations of the elements with no factual support. There is no specific allegation, for example, that any of McClung's allegedly false statements caused any Plaintiff to enter into any additional loan or other commitment. Plaintiffs fell far short of their burden in alleging fraud committed by McClung, let alone alleging secondary liability on the part of each and every Hillcrest Defendant.

Additionally, while Plaintiffs did not plead a direct fraud claim against Hillcrest or the Hillcrest Defendants, the apparent predicate for several of Plaintiffs' claims against the Hillcrest Defendants is the unsupported allegation that Hillcrest fraudulently manipulated its accounting regarding the Quintero loan. Plaintiffs do not make any attempt to establish facts suggesting any fraudulent accounting practices. Rather, Plaintiffs repeatedly and brazenly make bald assertions of "jimmied" documentation (Vol. 2, A0502 ¶ 206), "purposeful manipulation of Hillcrest accounts" (Vol. 2, A0504, ¶ 220), and "accounting hocus pocus" (Vol. 2, A0506, ¶ 225).

Plaintiffs did not satisfy Rule 9's pleading requirements with regard to any allegedly fraudulent conduct by Hillcrest (much less any individual Hillcrest Defendant), and all claims based on such conduct were properly dismissed with prejudice.

- 30 -

2. <u>Plaintiffs failed to plead facts demonstrating that Hillcrest wrongfully cancelled certain letters of credit</u>.

Plaintiffs also complain about an alleged "scheme to have McClung dummy up a sham letter" requesting certain letters of credit be cancelled. Plaintiffs repeat this statement, or some version of it, throughout their brief. There are several reasons that this theory was not properly pleaded and cannot support any theory of liability.

First, and most important, the only fact alleged with regard to this supposed "scheme" is that McClung sent a letter requesting certain letters of credit be terminated in March 2007. There is no allegation, however, that Hillcrest ever cancelled a letter of credit in response to this letter. Plaintiffs asked the District Court to assume that the fact that Hillcrest received this letter means that Hillcrest did what McClung asked, but an allegation along the lines of "Hillcrest cancelled the letters of credit on [date]" does not appear anywhere in the Omnibus Petition. Such an allegation is necessary because the letters of credit had an expiration date by which they would expire by their own terms. *See* Ariz. Admin. Code § R4-28-A1211(B)(2)(c) (2005).

While there is no allegation stating that a letter of credit was cancelled at a certain time, it became apparent upon Plaintiffs' response to the Hillcrest Defendants motion to dismiss that the allegation Plaintiffs construe as the "cancellation" of the letters of credit is the allegation – itself vague – that

- 31 -

Defendant Jon Forgey "instructed PDG to terminate the Quintero Property projects" on October 12, 2007. (*See* Vol. 2, A0590). There is no allegation anywhere in the Petition that the letters of credit were still actually in force and effect on October 12, 2007. The fact that certain letters of credit expired by their own terms was one of the reasons that the Court in *Van Weelden* – a similarly dismissed case that other Quintero investors attempted to bring against Hillcrest – dismissed claims predicated on cancellation of letters of credit. *See* 2011 WL 772522 at *4 (stating that Plaintiffs alleged the letter of credit at issue expired by its terms on May 16, 2006, before Hillcrest took any alleged action).

While Plaintiffs now argue that *Van Weelden* involved different letters of credit than those at issue here, this still does not fill the hole in Plaintiffs' Omnibus Petition. Plaintiffs never state which letters of credit they believe McClung asked for Hillcrest to cancel or which letters of credit they believe Hillcrest actually cancelled. And there is no indication that whichever letter of credit Plaintiffs believe was cancelled was still in force and effect when McClung allegedly wrote his March 2007 letter, let alone that they did not expire by their own terms before Forgey's alleged October 12, 2007, action.

3.  <u>Plaintiffs failed to plead facts demonstrating that the Hillcrest Defendants could be personally liable to Plaintiffs for their claims.</u>

Plaintiffs, unable to allege that any Movant individually committed a tort against any Plaintiff, attempt to impose liability on all of the Hillcrest Defendants

- 32 -

through a citation to the narrow holding of *Jabczenski v. Southern Pac. Mem'l Hosps., Inc.*, 579 P.2d 53 (Ariz. Ct. App. 1978), and a conclusory allegation that all Hillcrest Defendants participated in or had knowledge amounting to acquiescence to the alleged wrongdoing of both McClung and Hillcrest. Plaintiffs, however, incorrectly interpret *Jabczenski* and fail to identify any facts supporting this conclusion.

The general rule is that "[c]orporate directors are not personally liable . . . merely by virtue of the office they hold." *Id.* at 58. Thus, for *Jabczenski*'s limited theory of director liability to apply, Plaintiffs needed to establish some duty owed to them by the individual directors, officers, or shareholders, or the direct involvement of the individual directors, officers or shareholders in committing the alleged wrong. *See Dawson*, 163 P.3d at 1059-60. While Plaintiffs attempted to allege—again, in an ambiguous, conclusory fashion—that Hillcrest owed them a duty, Plaintiffs did not and cannot allege that the *individual directors and officers* of Hillcrest owed them any duty. *See id.* at 1060 (quoting 3A Fletcher § 1135 at 291 ("directors of a corporation do not owe a fiduciary duty to third parties, and cannot be held liable for an omission of duty to a third party for harm from acts done on behalf of the corporation.")).

With the Hillcrest Defendants owing no individual duty to Plaintiffs, Plaintiffs needed to allege facts establishing that the Hillcrest Defendants had

Appellate Case: 14-2266    Page: 43    Date Filed: 11/12/2014 Entry ID: 4215492

direct involvement in the alleged wrongdoing of Hillcrest. Plaintiffs failed to do so. Courts have recognized that the "participation" theory of liability mentioned in *Jabczenski* addresses only "a narrow set of circumstances" such as a corporate director's affirmative vote to convert the property of another. *Garrett v. McDonald's Corp.*, No. CV05-004TUC-FRZ(HCE), 2006 WL 839151 at *2 (D. Ariz. 2006). Indeed, the corporate directors' liability in *Jabczenski* was based on the directors' actual knowledge of an officer's conversion and passing of a resolution specifically ratifying it. 579 P.2d at 56.

Plaintiffs did not allege a single concrete fact showing that any Hillcrest Defendant directly participated in any tort allegedly committed by Hillcrest. The only attempts at such an allegation are various statements that the directors and officers "would have conducted votes" (Vol. 2, A0501, ¶ 205) or "had to vote" (Vol. 2, A0499, ¶ 197) with regard to certain alleged actions by Hillcrest. Plaintiffs, then, phrased the only allegations of participation by the Hillcrest Defendants as pure speculation and, under the *Iqbal*/*Twombly* pleading requirements, failed to establish plausible liability on the part of Movants. *See Twombly*, 550 U.S. at 555 (holding that the factual content alleged in a complaint must be sufficient to "raise a right to relief above the speculative level.").

Eventually, the Omnibus Petition goes beyond speculating as to votes the Hillcrest Defendants *might* have taken, and makes the blanket assertion that the

- 34 -

Hillcrest Defendants "authorized Hillcrest Bank's wrongdoing, intentional torts, and negligence by virtue of their voting and authority as board members." (Petition, ¶ 210). Relying on this false and unsupported assertion, Plaintiffs allege that the Hillcrest Defendants are liable under *Jabczenski* based simply on their roles as directors and officers of Hillcrest; a notion *Jabczenski* specifically rejected. *See* 579 P.2d at 58 ("Corporate directors are not personally liable . . . merely by virtue of the office they hold.").

Moreover, the Omnibus Petition doesn't identify any torts of Hillcrest in which the individual Hillcrest Defendants allegedly participated. Plaintiffs generally allege that Hillcrest committed torts, and that the Hillcrest Defendants generally participated in the business of Hillcrest. But, Plaintiffs do not and cannot allege that the Hillcrest Defendants participated in the commission of any specific tort. Absent non-speculative factual allegations demonstrating that the Hillcrest Defendants <u>directly</u> participated in a <u>specific</u> tort committed by Hillcrest, the narrow theory of individual liability in *Jabczenski* does not allow Plaintiffs to make a blanket assertion of the Hillcrest Defendants' individual liability. As the Omnibus Petition is devoid of such allegations, the Petition did not state any plausible claim against the Hillcrest Defendants and the District Court correctly dismissed the claims it did.

Appellate Case: 14-2266     Page: 45     Date Filed: 11/12/2014 Entry ID: 4215492

4. <u>Plaintiffs failed to allege that Hillcrest owed them any duty of care</u>.

The Omnibus Petition is devoid of any allegation of facts showing that Hillcrest (let alone the individual Hillcrest Defendants) owed any duty to Plaintiffs. In jurisdictions around the country, there is a "now almost universal rule that banks do not owe a common law duty of care to third-party non-customers." *VIP Mortgage Corp. v. Bank of America, N.A.*, 769 F. Supp. 2d 20, 27 (D. Mass. 2011). Arizona courts have favorably cited to this body of law:

> ("banks ordinarily owe no duty, fiduciary or otherwise, to third person") . . . (bank did not owe duty to another bank to disclose a check kiting scheme the first bank had discovered) . . . (bank had no duty to inform third party of its suspicions of fraud by its customer, as there was no contractual or fiduciary relationship requiring disclosure) . . . (bank was "clearly under no duty to disclose information about its customer to a non-customer") . . . ("a bank owes no duty to a third person with whom" the bank's depositor "does business") . . . .

*Kesselman v. Nat'l Bank of Ariz.*, 937 P.2d 341, 343-44 (Ariz. Ct. App. 1997) (citations omitted). Given that the Plaintiffs were not customers of Hillcrest, Hillcrest owed no duty of care to Plaintiffs. While Plaintiffs have alleged that QCA was a customer of Hillcrest, Plaintiffs do not and cannot allege that this relationship created any duty owed to QCA related to anything other than the maintenance of QCA's bank account.

Plaintiffs now, as they attempted to do in response to the motion to dismiss, argue that Hillcrest owed them a fiduciary duty because the "Arizona statutes

- 36 -

governing land development" create "a special escrow relationship." (Appellants Br., 26). Other than the requirement of an escrow account for construction financing, the Hillcrest Defendants are unaware of – and Plaintiffs have not cited – any fiduciary duties created by the Arizona land development statutes. In particular, the land development regulation concerning irrevocable letters of credit does not mention the creation of a fiduciary duty. *See* Ariz. Admin. Code § R4-28-A1211(B)(2). It appears that the sole source of the fiduciary duty that Plaintiffs claim governs their relationship with Hillcrest is the Arizona law holding that an escrow agent owes fiduciary duties to parties to the escrow agreement. *See Maganas v. Northroup*, 663 P.2d 565, 568 (Ariz. 1983). But, the fiduciary duties referenced in the very case Plaintiffs cite are duties that the <u>escrow agent</u> owes to the parties to the escrow agreement. *See id.* However, Plaintiffs' own allegations establish that First American Title Company, not Hillcrest, was the escrow agent. (Vol. 2, A0465-66, ¶ 44). The duties of an escrow agent did not extend to Hillcrest.

Rather, the allegations establish that the only relationship between any Plaintiff and Hillcrest was the fact that QCA was named as a third party beneficiary on the letters of credit. But this third party beneficiary status, as the District Court recognized, did not create any fiduciary duty. *See Urias v. PCS Health Sys., Inc.*, 118 P.3d 29, 35 (Ariz. Ct. App. 2005) ("A commercial contract

- 37 -

creates a fiduciary relationship only when one party agrees to serve in a fiduciary capacity."). Plaintiffs did not plead facts showing that Hillcrest undertook to serve as a fiduciary to QCA in the terms of the letters of credit. The District Court correctly dismissed all counts dependent upon a duty owed from Hillcrest to the Plaintiffs.

### D. Each of Plaintiffs' individual counts against the Hillcrest Defendants failed to state a claim.

The deficiencies described above permeate every claim Plaintiffs attempted to make against the Hillcrest Defendants, and supported dismissal of each claim. In addition, an examination of each of the individual counts reveals that the allegations failed to support key elements of each claim.

1. Count 1 - "Violation of Consumer Protection, Federal Law, Conversion, Breach of Fiduciary Duty, Invasion of Privacy, and Breach of Confidences."

In Count 1 Plaintiffs attempt to plead no fewer than 11 disparate claims in the space of 17 paragraphs. These claims, brought by QCA only, all relate to a set of allegations involving certain Hillcrest Defendants sending electronic copies of bank records to their attorneys at Bryan Cave. The District Court dismissed every claim included within this count with the exception of a conversion claim, for which the Hillcrest Defendants later received summary judgment.

In a further illustration of the incoherence of Plaintiffs' claims, Plaintiffs' argument that Count 1 should not have been dismissed does not even mention the

Appellate Case: 14-2266    Page: 48    Date Filed: 11/12/2014 Entry ID: 4215492

copied bank records and instead discusses the fiduciary duties Plaintiffs erroneously believe the letters of credit created. (Appellants' Br., 26-32). In any event, the District Court was correct in dismissing all of the claims it dismissed.

> a. *Consumer Protection, Invasion of Privacy, and Breach of Confidences*

The heading to Count 1 lists "Violation of Consumer Protection" as one of the claims allegedly included in the count. The District Court correctly noted that Plaintiffs did not identify any consumer protection statute on which they were attempting to proceed and none of the allegations in Count 1 are related to the elements of any consumer protection action. Likewise, none of the elements of any of the four "invasion of privacy" torts recognized in Kansas are pleaded, nor is any claim of "invasion of privacy" mentioned in the body of Count 1. Finally, "Breach of Confidences" does not appear to refer to any recognized Kansas tort and, in any event, is not mentioned within the allegations comprising Count 1. In sum, no claim was stated for any of these causes of action.

> b. *15 U.S.C. §§ 6801, 6805(b), 12 U.S.C. § 1831p-1, and 12 C.F.R. Parts 332 and 364*

Count 1 contains conclusory statements that the Hillcrest Defendants violated certain federal statutes and regulations, including 15 U.S.C. §§ 6801, 6805(b), 12 U.S.C. § 1831p-1, and 12 C.F.R. Parts 332 and 364. As the District Court correctly recognized, these statutes and regulations are enforced by federal

Appellate Case: 14-2266     Page: 49     Date Filed: 11/12/2014 Entry ID: 4215492

regulatory authorities and do not create private rights of action for individuals or corporations. *See* 15 U.S.C. § 6805(a); 12 U.S.C. § 1831p-1(e)(1)(A); 12 C.F.R. § 364.100. The District Court correctly dismissed these claims, for which QCA lacks standing as a matter of law.

### c. *18 U.S.C. § 1030(a)*

The other federal statute identified in Count 1 is 18 U.S.C. § 1030(a), a criminal statute covering, among other things, the act of intentionally accessing a computer without authorization or exceeding authorized access and thereby obtaining "information contained in a financial record of a financial institution." 18 U.S.C. § 1030(a)(2)(A). While the statute does create a private civil right of action in some circumstances, such a civil action may be maintained "only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." *Id.* at § 1030(g). The District Court correctly concluded that Plaintiffs did not plead that any of the factual scenarios listed in 18 U.S.C. § 1030(c)(4)(A)(i)(I–V) occurred in this case. (Vol. 3, A0970; Add., 15). Plaintiffs, therefore, may not maintain a civil action for any alleged violation.

### d. *Breach of contract and breach of implied contract*

Plaintiffs allege that Hillcrest "breached its contract or implied contract to keep bank records of QCA confidential." There are no allegations concerning the existence of any such contract, how the actions complained of would constitute a

- 40 -

breach of any such contract, or how QCA would have been damaged by the breach of any such contract. Plaintiffs' conclusory statement that a contract or implied contract was breached absent any factual allegations establishing the existence of a contract and/or the breach thereof, failed to state a plausible claim against the Hillcrest Defendants.

### e. *Breach of fiduciary duty*

As noted, this now appears to be the only portion of Count 1 for which Plaintiffs are contesting dismissal. In doing so, Plaintiffs advance their argument that the "special escrow relationship" allegedly created by Arizona law established a fiduciary duty Hillcrest owed to QCA. For the reasons discussed in Part II.C.4, *supra*, this argument is incorrect as a matter of law, and Hillcrest owed QCA no fiduciary duty. Moreover, even if Hillcrest did owe the fiduciary duties Plaintiffs suggest, there is no indication that the Hillcrest Defendants would violate those duties by sending copies of bank records to their attorneys. The District Court was correct in its analysis of each of the dismissed claims in Count 1 and should be affirmed.

### 2. Count 2 – "Interference with Contract & Intentional Interference with Business Relationship and Aiding and Abetting Intentional Interference with Business Expectancy and Contract."

Count 2 attempts to allege that the Hillcrest Defendants, by supposedly cancelling certain letters of credit at McClung's request, caused McClung to

- 41 -

breach his various loan agreements with Plaintiffs. In order to state a claim for tortious interference with a contract, Plaintiffs must establish "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Wells Fargo*, 38 P.3d at 31.

In dismissing Count 2, the District Court cited three distinct elements that Plaintiffs' allegations failed to establish: the intent to induce a breach, a connection between the alleged action and the alleged damages, and use of improper means to procure the breach. The District Court illustrated its analysis with citation to the similarly-dismissed *Van Weelden* case. On appeal, Plaintiffs do not offer any explanation of how their allegations met the required elements, but rather rest on the fact that *Van Weelden* was a different case with a different pleading. Again, Plaintiffs miss the point. The District Court was not citing *Van Weelden* as affirmatively establishing that Plaintiffs' claims were barred, but instead pointed out that both cases suffered from the same analytical deficiencies. The District Court correctly dismissed Count 2.

### a. Plaintiffs failed to plead intentional interference causing a breach.

To state a claim for tortious interference with a contract, Plaintiffs needed to allege facts establishing that each of the Hillcrest Defendants' <u>intentional</u>

- 42 -

interference <u>caused</u> a breach of each of the Plaintiffs' loan agreements.  Plaintiffs did not allege this element of the claim, even in a conclusory fashion.

The principal allegation in Count 2 – and throughout the Omnibus Petition – is that Hillcrest Bank failed to stop McClung from terminating certain irrevocable letters of credit.  As explained in Part II.C.2, *supra*, this allegation is itself too vague and muddled to form the basis of any plausible claim.  Moreover, Plaintiffs did not allege any facts showing that the alleged cancellation had any causal relationship to McClung's breach of various loan agreements with Plaintiffs or, indeed, any relationship whatsoever between the letters of credit and McClung's ability to repay Plaintiffs' loans.  If, as Plaintiffs suggest elsewhere in the Petition, the financial conditions causing McClung's breaches existed long before the Hillcrest Defendants are alleged to have taken any action, the Hillcrest Defendants cannot be liable for tortiously interfering with the loan agreements.  *See, e.g.*, 4B AM. JUR. 2D, § 13, at 313-314 (2007) ("in an action for procuring the breach of a contract, the defendant may not be held liable where it is found that the breach by the party of the contract rather than the actions by the defendant was the proximate cause of the plaintiff's damage.").

The failure to allege this element is why the pleading deficiencies of *Van Weelden* are illustrative:

> "there is no indication that this lack of infrastructure is the result of the breach of the purchase agreement.  In order to establish this

Appellate Case: 14-2266   Page: 53   Date Filed: 11/12/2014 Entry ID: 4215492

> critical connection, Plaintiffs must plead facts that that would show
> the Court that completed infrastructure . . . was part of the purchase
> agreement entered into between Plaintiffs and Quintero."

2011 WL 772522 at *4. This is the key analytical problem with Plaintiffs' claim, and, indeed, with Plaintiffs' entire case. Plaintiffs attempted to plead that Hillcrest wrongfully cancelled at least one letter of credit, which held funds related to Quintero's development. The letters of credit were entirely unrelated to Plaintiffs' individual loan agreements, which are not alleged to include any provisions related to completion of the Quintero's infrastructure.

In sum, Plaintiffs did not allege and could not allege facts establishing that Hillcrest Bank or the Hillcrest Defendants intended to cause McClung to breach his loan agreements with Plaintiffs or knew that cancelling of the letters of credit would result in the golf course infrastructure not being completed <u>and</u>, that, in turn, would result in McClung's alleged breach of the loan agreements. This element, which Plaintiffs did not plead even in a conclusory fashion, is an essential element of the claim. *See id.*

### b. *Plaintiffs failed to plead how they were damaged by the alleged interference*

Related to the element above is the fact that Plaintiffs did not allege facts showing the damage incurred as a result of the Hillcrest Defendants' alleged interference. Plaintiffs merely concluded Count 2 with a conclusory statement that they were damaged by the Hillcrest Defendants' actions (Vol. 2, A0498, ¶ 189).

- 44 -

As the Court in *Van Weelden* noted, this tactic does not suffice to properly plead the element of damages. *See id.* at *5 ("The Court warns Plaintiffs that the allegation . . . which reads 'Plaintiffs have been damaged as a result of [Defendant]'s improper actions' is a legal conclusion couched as a factual allegation and is therefore insufficient as the sole evidence of damages.").

> c. *Plaintiffs failed to plead that the Hillcrest Defendants employed improper means*

Nothing in the Omnibus Petition supports a conclusion that the Hillcrest Defendants acted improperly. This "element requires Plaintiffs to show that [each] Defendant acted improperly. Of the seven factors that can be analyzed to determine wrongful conduct, the "[f]actors deserving the most weight are the nature of the actor's conduct and the actor's motive." *Id.* at *5 (citing *Wells Fargo*, 38 P.3d at 32).

First, as discussed in Part II.C.2, *supra*, there are no allegations establishing that the letters of credit were valid agreements in full force and effect at the time of the alleged cancellation. If the letters of credit had expired, the "cancellation" of any letter of credit cannot possibly constitute wrongful conduct.

Further, as in *Van Weelden*, (a) the Plaintiffs failed to allege sufficient facts to show that it is plausible to conclude that Hillcrest Bank's motives (much less the alleged motives of Hillcrest Bancshares and each of the 18 officers and directors) were anything but self-interested, and (b) "[t]here is no indication that [any]

- 45 -

Defendant acted with an 'affirmative strategy' or an 'improper purpose' to deprive Plaintiffs of a fully-completed infrastructure of their property" or, more accurately, to cause a breach of Plaintiffs' various loan agreements. *See id.*

    3.  <u>Count 3 – "Aiding and Assisting Hillcrest Bank, Quintero Golf and Country Club, and McClung in Breaching Their Respective Fiduciary Duties and Guaranteed Funding in the Letters of Credit."</u>

Count 3 seeks to hold the Hillcrest Defendants liable for breaches of fiduciary duties allegedly owed to Plaintiffs by three different parties. As in Count 2, the entire basis for the claimed breaches is the alleged cancellation of certain unidentified letters of credit. As a preliminary matter, Count 3 is purportedly brought by all Plaintiffs, but as noted earlier the only Plaintiff who was a beneficiary of the letters of credit was QCA. There is no allegation establishing how Hillcrest, McClung, or Quintero owed any duty (fiduciary or otherwise) to any other Plaintiff related to the letters of credit. For this independent reason, Count 3 was properly dismissed as to all Plaintiffs other than QCA.

As for QCA, as discussed in Part II.C.4, *supra*, Hillcrest did not owe any fiduciary duty as a result of the letters of credit. Indeed, Plaintiffs' allegations do not actually refer to any duty in this count other than Hillcrest's duty to provide "guaranteed funding," which is merely a contractual duty under the letters of credit. There is no cause of action for "aiding and abetting" the breach of a contract, such that even if Hillcrest could be liable for breaching the letters of

- 46 -

credit, the individual Hillcrest Directors would not be secondarily liable as Plaintiffs attempt to argue.

Finally, as the District Court noted, Plaintiffs have not alleged any direct participation necessary to hold the individual Hillcrest Defendants liable for the breach of any fiduciary duty, even if such a duty had existed. The District Court correctly dismissed Count 3.

4. Count 4 – "Aiding and Abetting and Participating in Hillcrest Bank, Quintero Golf and Country Club, and McClung's Torts and Wrongdoing."

In Count 4, Plaintiffs re-allege every claimed wrongdoing by any party throughout the life of the Quintero golf course development and summarily allege that the Hillcrest Defendants are liable for all of it. In order to state a claim for aiding and abetting, Plaintiffs were required to plead facts establishing three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo*, 38 P.3d at 23. The District Court correctly dismissed this count on the bases that the underlying torts that the Hillcrest Defendants are alleged to have participated in are not clearly or effectively stated and that there are no allegations supporting that

- 47 -

the Hillcrest Defendants were aware that they were assisting McClung in committing torts.

> ### a. Plaintiffs failed to specify and sufficiently plead the underlying torts with which the Hillcrest Defendants are alleged to have assisted

Plaintiffs did not specifically identify any tort committed by McClung that the Hillcrest Defendants are alleged to have aided and abetted. Instead, the allegations of Count 4 refer to three vague categories of supposed wrongful conduct and generally allege that the Hillcrest Defendants aided and abetted all of it. First, Plaintiffs claim that the Hillcrest Defendants aided and abetted McClung "in the achievement of the breach of his obligations." (Vol. 11, A0507, ¶ 229). Assuming that Plaintiffs are referring to McClung's breach of his contractual obligations to them, there can be no claim of aiding and abetting, which requires underlying <u>tort</u> liability on the part of a primary tortfeasor. *See id.*

Plaintiffs next allege that the Hillcrest Defendants aided and abetted McClung "in the achievement of his fraudulent misrepresentation." (Vol. 2, A0507, ¶ 232). In an attempt to salvage this count on appeal, Plaintiffs again list several statements <u>from McClung</u> to the individual Plaintiffs and claim that these statements were false. But Plaintiffs do not identify and have never identified which of these alleged fraudulent misrepresentations the Hillcrest Defendants are alleged to have aided and abetted. This is particularly problematic, as Plaintiffs

Appellate Case: 14-2266     Page: 58     Date Filed: 11/12/2014 Entry ID: 4215492

have identified multiple purportedly fraudulent statements made by McClung before Hillcrest finalized the Quintero loans in March 2005. (*See* Vol. 2, A4077-78, ¶¶ 110, 114).

Further, as noted above, none of McClung's alleged misrepresentations are pleaded with sufficient particularity to state an underlying fraud claim under Rule 9. Without stating an underlying fraud claim, Plaintiffs cannot possibly state a claim for aiding and abetting fraud. *See Van Weelden*, 2011 WL 772522 at *7 (dismissing a claim that Hillcrest aided and abetted McClung's fraud because the complaint did not plead the underlying fraud with sufficient particularity).

Finally, Plaintiffs allege that the Hillcrest Defendants aided and abetted McClung's and Quintero's "violation of their foregoing fiduciary duties." (Vol. 2, A0507, ¶ 228). Plaintiffs have not pleaded facts establishing any express fiduciary relationship created by their dealings with McClung. Moreover, it is well-settled that a relationship between a real estate developer and his or her investors is an arms-length business relationship that does not by itself give rise to fiduciary duties. *See, e.g.*, *Lagen v. Balcor Co.*, 653 N.E.2d 968, 975-76 (Ill. Ct. App. 1995) (stating that "a slightly dominant business position [does] not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship." (internal quotation omitted)).

Appellate Case: 14-2266    Page: 59    Date Filed: 11/12/2014 Entry ID: 4215492

### b. Plaintiffs failed to plead facts establishing that the Hillcrest Defendants had knowledge of McClung's alleged torts

Even if Plaintiffs had identified a specific tort committed by McClung, aiding and abetting liability could only attach to the Hillcrest Defendants upon a showing that they had knowledge that they were assisting McClung in committing torts. *See Dawson*, 163 P.3d at 1052 ("As this theory of liability depends upon proof of scienter, it must be shown that the defendants knew the conduct they allegedly aided and abetted was a tort."). Facts supporting such knowledge do not exist and Plaintiffs did not allege them. (*See* Part II.C.1, *supra*). Unable to make such allegations, Plaintiffs instead rely on the conclusory statement that the Hillcrest Defendants "had a general awareness" of McClung's "fraudulent scheme." (Vol. 2, A0503, ¶ 211). But, there is not a single factual allegation supporting this conclusion. Plaintiffs' only attempt at such an allegation is the speculative statement that the Hillcrest Defendants knew "facts clearly disclosed in the Bank's and McClung's transactions and then each purposely closed his or her eyes to clear implications of such facts." (Vol. 2, A0504, ¶ 218). This speculation does not meet the *Iqbal/Twombly* plausibility standard. Further, Plaintiffs appear to be suggesting that the "clearly disclosed" facts included evidence of fraud, and Plaintiffs were required to identify the statements that allegedly alerted the Hillcrest Defendants to the fraud with particularity under Rule 9. Plaintiffs have made no attempt at doing so.

- 50 -

Plaintiffs also appear to suggest that the Hillcrest Defendants knew of McClung's "fraudulent scheme" because they knew of his poor financial condition. (Vol. 2, A0501, ¶ 203). Even assuming the Hillcrest Defendants did know of McClung's poor financial condition, Arizona courts have specifically rejected that this would support the inference that the Hillcrest Defendants knew of a fraudulent scheme:

> That Turner and Withycombe were aware of Futech's financial condition and of Goett's dishonest character, and were aware that he was soliciting funds from Dawson, indicates poor judgment and risky business practices. It does not, however, rise to the level of scienter required for aiding and abetting, specifically that they were aware that Goett *did or would in fact* use fraudulent statements as a means of procuring the loan. To infer awareness of the fraudulent scheme from Dawson's characterization of what Turner and Withycombe knew and thought is to pile inference upon inference, which stretches the evidence presented beyond the bounds of circumstantial evidence.

*Dawson*, 163 P.3d at 1053. As in *Dawson*, Plaintiffs here seek to allege knowledge by piling a series of unreasonable inferences on top of their own unfounded guesses as to what the Hillcrest Defendants' motivations might have been rather than pleading facts from which knowledge could actually be alleged. Plaintiffs' aiding and abetting theory fails on this element as well.

      *c. Plaintiffs failed to plead facts establishing how the Hillcrest Defendants provided substantial assistance to any alleged tort committed by McClung*

Plaintiffs again rely solely on conclusory allegations to establish the element of substantial assistance. Plaintiffs claim generally that certain actions of Hillcrest

- 51 -

"substantially assisted and encouraged" McClung's wrongdoing. At no point do Plaintiffs include an allegation explaining how any of the alleged actions of Hillcrest enabled any wrongdoing by McClung.

     5.   Count 5 – "Joint Enterprise, Conspiracy, and Concerted Action by Agreement."

In Count 5, Plaintiffs tell a colorful narrative about the "shady enterprise" created between the Hillcrest Defendants and McClung, which Plaintiffs own allegations admit is based on their speculation as to what "had to" have happened. (Vol. 2, A0509, ¶ 239). Despite Plaintiffs' insistence that "[t]hese were desperate times" and invocation of poker terminology, Plaintiffs succeeded only in alleging the obvious fact that both McClung and the Hillcrest Defendants wanted the Quintero development to succeed. (Vol. 2, A0509, ¶ 239). Plaintiffs take this single benign fact and unreasonably conclude that "[t]here had to be a plan between McClung and the board." (Vol. 2, A0510, ¶ 242). This wording tacitly admits that this count does not "rise above the speculative level," and, therefore, Count 5 fails under the *Iqbal*/*Twombly* pleading requirements, and the District Court correctly dismissed it with prejudice.

Further, as the District Court agreed, even if Plaintiffs' allegations were not bald speculation, the alleged civil conspiracy claim would fail. "[L]iability for civil conspiracy requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit."

Appellate Case: 14-2266    Page: 62    Date Filed: 11/12/2014 Entry ID: 4215492

*Wells Fargo*, 38 P.3d at 36 (internal quotations omitted). A claim for civil conspiracy must be proven by clear and convincing evidence. *Id.* at 37.

Plaintiffs did not allege the existence of an agreement to commit a specific tort. The agreement Plaintiffs asserted in Count 5 was not one to commit a specific tort, but rather an agreement to generally act unlawfully. Indeed, Plaintiffs do not mention any underlying tort by name in Count 5, making it impossible to determine what the Hillcrest Defendants supposedly conspired to do. Because Plaintiffs have not alleged that the Hillcrest Defendants and McClung entered into an agreement to commit a specific tort and thereupon committed a specific tort, Count 5 does not state a claim for civil conspiracy. *See Van Weelden*, 2011 WL 772522 at *8 ("Plaintiffs must present clear and convincing evidence that there was an agreement to accomplish a specific tort, and without stating the underlying tort, Plaintiffs' conclusory allegation that Defendant's officers entered into an agreement with McClung is insufficient to state a claim for civil conspiracy.").

### 6. Count 6 – "Breach of Fiduciary Duty, Aiding and Abetting Securities Fraud."

In Count 6, Plaintiffs attempt to simultaneously state two unrelated claims: (1) that the Hillcrest Defendants breached a fiduciary duty to QCA by "cancelling" the letters of credit; and (2) that the Hillcrest Defendants aided and abetted securities fraud committed by McClung in his sale of "Membership Certificates."

- 53 -

Plaintiffs' fiduciary duty claim is substantively the same as that alleged in Count 3, which the Hillcrest Defendants analyzed above. (*See* Part II.C.3, *supra*). The only difference in Count 6 is that Plaintiffs allege that the Hillcrest Defendants personally owed a fiduciary duty to QCA. This contention is contrary to Arizona law. *See Dawson*, 163 P.3d at 1060 ("directors of a corporation do not owe a fiduciary duty to third parties, and cannot be held liable for an omission of duty to a third party for harm from acts done on behalf of the corporation."). Thus, any claim that any Hillcrest Defendant breached a fiduciary duty owed to QCA was correctly dismissed.

In Count 6, the claim that the Hillcrest Defendants aided and abetted McClung's alleged securities fraud is apparently based on the same generalized claims of fraudulent conduct which appear elsewhere in the Omnibus Petition. To state a claim for securities fraud, the Petition needed to allege facts showing that McClung employed fraud "in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities." Ariz. Rev. Stat. § 44-1991(A). As the District Court correctly observed, there is no allegation that any of the alleged fraudulent statements were made in connection with the sale of a "Membership Certificate" to any Plaintiff. Additionally, as discussed throughout and noted by the District Court, the alleged

Appellate Case: 14-2266    Page: 64    Date Filed: 11/12/2014 Entry ID: 4215492

fraud and the Hillcrest Defendants' alleged assistance with that fraud were not pleaded with sufficient particularity to state a claim under Rule 9.

### 7. Count 7 – "Conversion and Aiding and Abetting Conversion."

Count 7 is brought by Plaintiffs Hilcher and Nichols only, and breaks from the allegations forming the basis of much of the Omnibus Petition. In this Count, Hilcher and Nichols allege that Hillcrest wrongfully withheld money that was supposed to be delivered to Hilcher and Nichols. Under Kansas law, which applies to this claim, "[c]onversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005). Count 7 is devoid of any allegations establishing the amount of money Hillcrest supposedly received, when Hillcrest supposedly received it, why Hilcher and Nichols were entitled to it, and why Hillcrest was not authorized to hold the money. As such, Plaintiffs failed to plead facts supporting the elements of a conversion claim against Hillcrest, let alone any of its officers or directors.

And as the District Court correctly observed, Plaintiffs admitted within their own allegations that they are simply guessing that Hillcrest received the money referenced in Count 7. (Vol. 2, A0476, ¶ 100 ("The amounts may have been wired to Hillcrest.")). In their brief to this Court, Plaintiffs response is to simply restate the allegation that the money "may be" in the possession of Hillcrest. The

Appellate Case: 14-2266     Page: 65     Date Filed: 11/12/2014 Entry ID: 4215492

conversion claim cannot, therefore, rise above the speculative level, and was correctly dismissed.

Additionally, while the District Court did not include this analysis in its dismissal of Count 7, Count 7 is barred by the applicable statute of limitations. Plaintiffs alleged that the sales allegedly entitling Hilcher and Nichols to receive the money occurred in "August and September of 2004." (Vol. 2, A0475 ¶ 99). Under both Kansas and Arizona law, the limitations period for a conversion claim is two years. K.S.A. 60-513(a)(2), Ariz. Rev. Stat. § 12-542(5). Even if this claim, which first appeared in the June 12, 2012, Omnibus Petition related back to the original filing date of the first Petition against the Hillcrest Defendants – January 4, 2011 – such date was significantly more than two years after the alleged conversion would have occurred.

        8.  <u>Count 8 – "Negligence, Assisting and Participating in the Negligence of Hillcrest Bank."</u>

In Count 8, Plaintiffs asked the District Court and this Court to dramatically expand potential tort liability for directors and officers of a corporation by asserting that, if negligent management of the corporation by a director leads the corporation act negligently, the individual directors are *personally* liable to third parties for any injury caused. This novel theory is not supported by Arizona (or any other state) law:

Appellate Case: 14-2266    Page: 66    Date Filed: 11/12/2014 Entry ID: 4215492

> Under the participation theory, . . . a corporate officer may be liable for "misfeasance," that is, the improper performance of an act, but not "mere nonfeasance," that is, the omission of an act that a person ought to do.

3A Fletcher Cyc. Corp. § 1137 at 291 (cited in *Dawson*, 163 P.3d at 1060). Though *Jabczenski* included reference to "negligent management and supervision," the holding of *Jabzcenski* is explicitly limited to the corporation's commission of an <u>intentional</u> tort. *See* 579 P.2d at 58 ("Therefore, *with specific reference to the conversion of funds in the possession of a corporation*, an officer thereof can be liable for any act which constitutes a conversion of a third person's property . . . .") (emphasis added). As noted above, the general rule is that directors and officers are not liable for torts committed by a corporation. Therefore, these Defendants submit that the Court should not expand *Jabzcenski* beyond its limited holding and should affirm the District Court's dismissal of Count 8.

Setting that issue aside, the District Court correctly concluded that Plaintiffs failed to state the necessary predicate of this theory: that the company, Hillcrest, was negligent. First, for the reasons discussed in Part II.B.4, *supra*, Plaintiffs cannot allege that Hillcrest owed them a duty of care. Additionally, there are no factual allegations that Hillcrest breached any duty of care it might have owed. Plaintiffs' only concrete factual allegation in this Count again concerns the "cancellation" of the letters of credit. (Vol. 2, A0514-15, ¶ 263). For reasons previously identified, Plaintiffs failed to allege facts supporting any tort liability

Appellate Case: 14-2266   Page: 67   Date Filed: 11/12/2014 Entry ID: 4215492

(as opposed to breach of contract) on the part of Hillcrest or the Hillcrest Defendants related to the letters of credit. (*See* Part II.B.2, *supra*).

        9.   Count 9 – "Violations of Consumer Protection Law, Assisting and Participating in Violations of Consumer Protection Law."

Count 9 is another attempt to hold the Hillcrest Defendants liable for McClung's alleged fraud, this time under Arizona consumer protection law. As they did in Count 1, Plaintiffs refer vaguely to "Arizona Consumer Protection statutes," but do not identify a single statutory provision on which their purported cause of action is based. Again, "consumer protection" is not a cause of action, but a category of causes of action. Plaintiffs were required to give some indication of what their intended consumer protection theory was. Further, Plaintiffs merely concluded that Hillcrest "engaged in trade and commerce within the meaning" of said statutes without defining the term or stating why Hillcrest meets the definition. (Vol. 2, A0517, ¶ 272). Additionally, assuming Plaintiffs are intending to proceed under Ariz. Rev. Stat. § 44-1522 – the statute governing fraud in connection with the sale of merchandise – Plaintiffs failed to include any allegation that Hillcrest or any Hillcrest Defendant was involved in the sale of merchandise such that the statute could apply. These pleading deficiencies and the fact that Plaintiffs' failed to plead fraud with requisite specificity supported the District Court's dismissal of this count.

- 58 -

10. Count 16 – "Tortious Interference with Contracts, Aiding and Abetting Hillcrest Bank's and McClung's Tortious Conduct."

Count 16 is the only count directed to Defendant Hillcrest Bancshares, the parent corporation for Hillcrest Bank. In it, Plaintiffs allege that Hillcrest Bancshares somehow participated in all of the torts alleged in the Omnibus Petition. As the District Court correctly concluded, "[a]lthough Plaintiffs list conclusory statements of alleged wrongs committed by Hillcrest Bank, Plaintiffs fail to specify Hillcrest Bancshares involvement in these wrongs apart from its ownership of Hillcrest Bank." (Vol. 3, A0982; Add, 27). In addition to the fact that Plaintiffs, throughout the Petition, failed to state any claim for which Hillcrest or its board could be liable, there are simply no allegations from which there is a plausible inference that Hillcrest Bancshares participated in any tort. Count 16 was properly dismissed.

**E. The District Court properly granted summary judgment on the conversion claim against the Hillcrest Defendants.**

Despite not listing as an issue on appeal the District Court's award of summary judgment on the only claim against the Hillcrest Defendants that the District Court did not dismiss – the conversion claim brought by QCA related to the copied bank records – Plaintiffs nevertheless conclude their brief to this Court by arguing that summary judgment was improper.

Appellate Case: 14-2266    Page: 69    Date Filed: 11/12/2014 Entry ID: 4215492

To the extent the Court considers this an issue on appeal despite Plaintiffs' failure to identify it as such, the District Court's ruling was correct. As explained earlier, under Kansas law, which applies to this claim, "[c]onversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." *Bomhoff*, 109 P.3d at 1246. The District Court correctly concluded that the uncontroverted facts established that QCA did not have a property interest in the copied bank records and that, even if they had, copying the records would not have deprived them of any possessory right to those records. (Vol. 4, A1669).

Plaintiffs argue that they have an intangible right in Hillcrest Bank's records as a customer of the bank. However, as the District Court explained, "to have an intangible property right amenable to conversion . . . this right must also be accompanied by a present property interest." (Vol. 4, A1670). The District Court cited *Near v. Crivello*, the very case on which Plaintiffs attempt to rely, which analyzed several Kansas Court of Appeals cases in announcing this limitation. *See* 673 F. Supp. 2d 1265, 1282 (D. Kan. 2009). For instance, in *Farmers State Bank v. FFP Operating Partners, L.P.*, the Kansas Court of Appeals found that a plaintiff's perfected security interest—an intangible right—was subject to conversion because it presented the plaintiff with an immediate possessory right in the collateral secured by the instrument. *See* 935 P.2d 233, 235-36 (Kan. Ct. App.

- 60 -

1997).  The District Court's analysis that Plaintiff's claimed *privacy* right in the bank records was not a present *property* right (and therefore not subject to conversion) was well-founded.

Though Plaintiffs' brief does not address the issue that the documents were merely copied, this fact also precludes Plaintiffs claims for conversion.  Merely copying a document cannot constitute a conversion as a matter of law.  In *Moeller v. Kain*, the Kansas Court of Appeals rejected a conversion claim brought by the owner of an investment services company against an investment advisor who left the company.  *See* No. 98,531, 2008 WL 4416042 at *1 (Kan. Ct. App. 2008).  The owner argued that the advisor converted client information from the company by copying contact and financial information from the client files and using it to take existing clients with him to his new company.  *Id.* at *2-3.  The court held that this did not amount to a conversion of the owner's property in part because

> [t]o the extent Sunflower possessed any ownership rights in Moeller's client accounts, the district court properly concluded that Moeller did not exclude Sunflower's possessory rights to the accounts by copying the files.  Kain failed to establish any information was missing from the files, and, after Moeller left Sunflower, Kain possessed sufficient information to contact the clients by letter, requesting their continued business with Sunflower.

*Id.* at *6.  The uncontroverted facts in this case demonstrate that the Hillcrest Defendants merely copied certain files, the originals of which remained intact at

Appellate Case: 14-2266     Page: 71     Date Filed: 11/12/2014 Entry ID: 4215492

Hillcrest Bank. The Hillcrest Defendants' actions were not to the exclusion of any ownership interest QCA had in the bank records.

Plaintiffs' brief further argues that summary judgment was improper because the District Court did not allow them to amend their Omnibus Petition to attempt to state a spoliation claim on the basis that some of the records were encrypted and could not be accessed. There are two reasons this argument is unavailing. First, regardless of exactly what the copied documents were, the fact that QCA did not have a possessory right to them and that copying the documents would not have been to the exclusion of this right would not change. Second, Plaintiffs did not file a motion for leave to amend their Omnibus Petition, and the District Court did not deny any such motion. There is no appealable issue presented by Plaintiffs' stated desire to amend.

## CONCLUSION

Because the FDIC properly removed this action prior to the expiration of the time specified in the plain language of the applicable statute, the District Court's denial of Plaintiffs' Motion to Remand should be affirmed. And because Plaintiffs failed to state any plausible claims other than those specifically noted by the District Court, the District Court's order partially granting the Hillcrest Defendants' Motion to Dismiss should be affirmed.

- 62 -

Dated:  November 10, 2014       Respectfully submitted,

LEWIS, RICE & FINGERSH, L.C.

By:   s/ Scott A. Wissel

    Thomas R. Larson     MO Bar #26114
    Scott A. Wissel       MO Bar #49085
    1010 Walnut, Suite 500
    Kansas City, MO 64106
    (816) 421-2500

    Attorneys for the Hillcrest Defendants

## CERTIFICATE OF COMPLIANCE – RULE 32(A)(7)

The undersigned certifies that this brief complies with the typeface requirements and type-volume limitations of Rule 32(a). The brief was prepared in a proportionally-spaced typeface using Microsoft Office Word 2010 in 14 pt. Times New Roman. The brief contains <u>14,968</u> words, excluding the parts exempted by Rule 32(a)(7)(B)(iii).

  /s/ Scott A. Wissel
An Attorney for Appellees
Dated: November 10, 2014


## CERTIFICATE OF COMPLIANCE – 8TH CIR. RULE 28A

I certify that the original copy of this brief, along with the Addendum, was electronically filed on November 10, 2014, and that ten (10) copies of this brief, together with a CD-ROM containing a digital version thereof in PDF format, which was scanned for viruses and is virus free, were given on November ____, 2014 to a commercial carrier for overnight delivery to:

Clerk of the Court
Thomas F. Eagleton Courthouse
111 South 10th Street
St. Louis, Missouri 63102
(314) 244-2400

  /s/ Scott A. Wissel
An Attorney for Appellees
Dated: November __, 2014

Appellate Case: 14-2266   Page: 74   Date Filed: 11/12/2014 Entry ID: 4215492

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on November 10, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                /s/ Scott A. Wissel
                An Attorney for Appellees
                Dated: November 10, 2014

Appellate Case: 14-2266     Page: 75     Date Filed: 11/12/2014 Entry ID: 4215492