# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

## No. 16-1161
_____

**KENNETH GRAHAM, on behalf of himself and all others similarly situated,**

## PLAINTIFF - APPELLANT

## v.

**CATAMARAN HEALTH SOLUTIONS, LLC, f/k/a Catalyst Health Solutions, Inc., f/k/a HEALTHEXTRAS, INC.; HEALTHEXTRAS, LLC**

## DEFENDANTS – APPELLEES

**ALLIANT SERVICES HOUSTON, INC.,**

## DEFENDANT

**STONEBRIDGE LIFE INSURANCE COMPANY; VIRGINIA SURETY COMPANY, INC.**

## DEFENDANTS – APPELLEES

_____

On Appeal from the United States District Court
Eastern District of Arkansas, Western Division
No. 4:14-cv-00589-BRW
_____

## REPLY BRIEF OF APPELLANT
_____

Roger L. Mandel
rlm@lhlaw.net
Bruce E. Bagelman
beb@lhlaw.net
LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Ave., Suite 777
Dallas, Texas  75219-4259
Telephone:  (214) 560-2201
Telecopier:  (214) 560-2203

Aaron C. Hemmings
ahemmings@hemmingsandstevens.com
Hemmings & Stevens, P.L.L.C.
5613 Duraleigh Road, Suite 151
PO Box 90698
Raleigh, NC 27675
Telephone:  (919) 277-0161
Telecopier:  (919) 277-0162

Joseph "Jay" H. Aughtman
jay@aughtmanlaw.com
Aughtman Law Firm, LLC
1772 Platt Place
Montgomery, AL 36117
Telephone:  (334) 215-9873
Telecopier:  (334) 213-5663

Denny Paul Petty
pettylawfirm@hotmail.com
Petty Law Firm
411 West Arch Avenue
Searcy, Arkansas 72143
Telephone: (501) 268-7161
Telecopier: (501) 268-9895

April 21, 2016

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS .......................................................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

I. The District Court Erred in Dismissing Graham's Breach of
Contract Cause of Action ............................................................................ 1

II. Graham Sufficiently Pleads Injury-In-Fact Under Article III
as to His Unjust Enrichment and Conspiracy Causes of Action .................... 4

    A. *Appellees' straw man argument fails* ................................................ 4

    B. *Graham sufficiently pleads Article III injury-in-fact by
pleading that Appellees violated his rights under various
Arkansas statutes* ......................................................................... 5

    C. *Graham sufficiently pleads injury-in-fact under Article III by
pleading damages in the form of premiums paid pursuant to
illegal and void ab initio policies* .................................................. 6

III. The Policies Are *Void Ab Initio* .................................................................... 8

    A. *Absent the Savings Statute, Arkansas law would render the
Policies void ab initio* .................................................................... 8

    B. *Based upon its plain language, the Savings Statute does not
apply to the Policies* .................................................................... 17

    C. *If it is applicable at all to the Policies, insurers like Appellees
cannot invoke the Savings Statute in defense of a suit to
recover premiums paid pursuant to illegal and void policies* ............. 20

    D. *Alternatively, if insurers can ever invoke the Savings Statute
for their benefit, they may only do so where the statutory
violation can be cured, which is not true of the Policies* .................. 21

      *E.*      *The other HealthExtras Scheme decisions are not persuasive* ...........22

IV.    Because Graham Sufficiently Pled Facts Supporting Fraudulent
       Concealment, the District Court Erred in Dismissing His Unjust
       Enrichment and Conspiracy Causes of Action Based on Limitations ..........25

*A.*     *Graham sufficiently pled affirmative acts of fraudulent*
       *concealment* ...................................................................................................25

*B.*     *Graham did not plead facts demonstrating he should have*
       *discovered his causes of action in the exercise of due diligence* .................26

V.     The Issuance of the *Void Ab Initio* Policies Does Not
       Support Dismissal of Graham's Unjust Enrichment Claim ..........................29

CERTIFICATE OF COMPLIANCE .......................................................................31

CERTIFICATE OF SERVICE ................................................................................31

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*3405 Putnam Realty Corp. v. Chubb Custom Ins. Co.*,
   788 N.Y.S.2d 64 (N.Y. App. Div. 2005).......................................12, 13

*In re Ambassador Group, Inc. Litig.*,
   1991 WL 11033784 (E.D.N.Y. Feb. 27, 1991) .................................22

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006)......................................................................7

*Bennett v. Spear*,
   520 U.S. 154 (1997)......................................................................6

*Bice v. United Am. Ins. Co.*,
   2010 WL 2691690 (W.D. Ark. July 6, 2010)....................................28

*Blanchard 1986, Ltd. v. Park Plantation, LLC*,
   553 F.3d 405 (5th Cir. 2008) .......................................................7

*Bd of Ins. Comm'rs v. Great S. Life Ins. Co.*,
   239 S.W.2d 803 (Tex. 1951) .......................................................14

*Bourland v. First Nat'l Bank Bldg. Co.*,
   273 S.W. 681 (Ark. 1922)............................................................16

*Campbell v. Nat'l Union Fire Ins. Co.*,
   2015 U.S. Dist. LEXIS 13202 (D.D.C. Sept. 16, 2015)....................24

*Carrier v. Allstate Ins. Co.*,
   702 So. 2d 367 (La. App. 1997) ..............................................12, 13

*Cinkutis v. Confederation Life Ins. Co.*,
   1990 WL 161260 (E.D. Pa. Oct. 19, 1990) ....................................13

*Clayton's Auto Glass, Inc. v. First Data Corp.*,
   2013 WL 5460872 (E.D.N.Y. Sept. 30, 2013) ................................13

*Commercial Union Fire Ins. Co. v. King*,
   156 S.W. 445 (Ark. 1913)............................................................3

**Cases**                                                                           **Page(s)**

*Copley v. Pekin Ins. Co.*,
   488 N.E.2d 1004 (Ill. 1986)............................................................................2

*Ferrell v. Elkins*,
   251 S.W. 380 (Ark. 1923)..........................................................................10

*Francis v. Protective Life Ins. Co.*,
   249 S.W.3d 828 (Ark. Ct. App. 2007), *rev'd on other grounds*, 263
   S.W.3d 117 (Ark. 2007)....................................................................... 14-15

*Ganntt v. Ark. Power & Light Co.*,
   74 S.W.2d 232 (Ark. 1934) .........................................................................8

*Giercyk v. Nat'l Union Fire Ins. Co.*,
   2014 U.S. Dist. LEXIS 183642 (D.N.J. Dec. 4, 2015).....................................22

*Guar. Nat'l Ins. Co. v. Denver Roller, Inc.*,
   854 S.W.2d 312 (Ark. 1993) .......................................................................14

*Highlands Ins. Co. v. Am. Marine Corp.*,
   607 F.2d 1101 (5th Cir. 1979) ....................................................................19

*Hill v. Agri-Risk Servs.*,
   827 P.2d 904 (Okla. Ct. App. 1992) ............................................................19

*Hogben v. Metro. Life Ins. Co.*,
   38 A. 214 (Conn. 1897) .............................................................................10

*Home Life Ins. Co. of N.Y. v. Masterson*,
   21 S.W.2d 414 (Ark. 1929) ..........................................................................9

*Kirby v. United Am. Ins. Co.*,
   2010 U.S. Dist. LEXIS 24580 (E.D. Ark. Jan. 22, 2010) ................................28

*Latta v. Farmers County Mut. Fire Ins. Co.*,
   313 S.E.2d 214 (N.C. Ct. App. 1984)..........................................................11

*Lexmark Int'l Co. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014).................................................................................7

**Cases**                                                                    **Page(s)**

*Markel Servs., Inc. v. Nat'l Farm Lines*,
    426 F.2d 1123 (10th Cir. 1970) ........................................................ 12

*Medina v. Safe-Guard Prods.*,
    78 Cal. Rptr. 3d 672 ........................................................................ 23

*Mut. Relief Ass'n v. Ray*,
    292 S.W. 396 (Ark. 1927) .................................................................. 4

*People v. United Nat'l. Life Ins. Co.*,
    427 P.2d 199 (Cal. 1967) .................................................................. 10

*Petruzzo v. Nat'l Union Fire Ins. Co.*,
    124 F. Supp. 3d 642 (E.D.N.C. 2015) ............................................... 24

*Platt River Ins. Co. v. Baptist Health*,
    2009 WL 2015102 (E.D. Ark. 2009) .................................................. 17

*Providence Sav. Life Assur. Soc. v. Reutlinger*,
    25 S.W. 835 (Ark. 1894) ............................................................... 18-19

*Rest. Enters. v. Sussex Mut. Ins. Co.*,
    243 A.2d 808 (N.J. 1968) ................................................................. 22

*Robinson v. Sec. Life & Annuity Co.*,
    79 S.E. 681 (N.C. 1913) .................................................................. 11

*Sec. Life Ins. Co. v. Clark*,
    494 S.E.2d 388 (Ga. Ct. App. 1997), *rev'd in part sub nom.*, 509
    S.E.2d 602 (Ga. 1998) ..................................................................... 19

*Smith v. Reg'l Transit Auth.*,
    756 F.3d 340 (5th Cir. 2014) .............................................................. 7

*Sovereign Camp*, *W.O.W. v. Law*,
    80 S.W.2d 50 (Ark. 1935) ................................................................. 10

*Starkey Constr., Inc. v. Elcon, Inc.*,
    457 S.W.2d 509 (Ark. 1970) ............................................................. 17

**Cases**                                                                                     **Page(s)**

*Swartz v. John Hancock Mut. Life Ins. Co.*,
    170 A. 355 (Pa. 1934) ........................................................................11

*U.S. v. Lucas*,
    499 F.3d 769 (8th Cir. 2007) ............................................................25

*United Order of Good Samaritans v. Mekins*,
    244 S.W. 439 (Ark. 1922)....................................................................9

*Urrutia v. Decker*,
    992 S.W.2d 440 (Tex. 1999) .............................................................12

*Wal-Mart Stores, Inc. v. Baysinger*,
    812 S.W.2d 463 (Ark. 1991) .............................................................14

*Warth v. Sullivan*,
    422 U.S. 490 (1975).........................................................................5, 6

*Watson v. Nat'l Union Fire Ins. Co.*,
    2015 U.S. Dist. LEXIS 131094 (E.D. La. Sept. 29, 2015)................23

*Williams v. Continental Life & Accident Co.*,
    553 P.2d 708 (Idaho 1979) ...............................................................11

*Williams v. Nat'l Union Fire Ins. Co.*,
    2014 U.S. Dist. LEXIS 123040 (N.D. Ga. Sept. 4, 2014)................24

## Constitution and Statutes

U.S. Const. art. III ............................................................*passim*

Ark. Code Ann. § 23-63-113................................................................15

Ark. Code Ann. § 23-63-522(f)(2)......................................................16

Ark. Code Ann. § 23-79-112...............................................................16

Ark. Code Ann. § 23-79-112(b)(1).......................................................19

Ark. Code Ann. § 23-79-112(b)(8).......................................................19

## Constitution and Statutes

**Constitution and Statutes**      **Page(s)**

ARK. CODE ANN. § 23-79-118 ..............................................................*passim*

ARK. CODE ANN. § 23-79-144 .......................................................................16

ARK. CODE ANN. § 23-80-206(a) .................................................................14

ARK. CODE ANN. § 23-86-101 .......................................................................8

ARK. CODE ANN. § 23-86-102 .....................................................................13

ARK. CODE ANN. § 23-86-106 .....................................................................13

ARK. CODE ANN. § 23-86-106(2)(A)(iii) .......................................................8

O.C.G.A. § 33-24-12(b) ..............................................................................24

**Rules**

FED. R. CIV. P. 12(b)(1) ..........................................................................4, 5

**Other Authorities**

32 CORPUS JURIS § 407 .................................................................................11

43 AM. JUR. 2D *Insurance* § 397 (2016) ......................................................2

BRYAN A. GARNER, BLACK'S LAW DICTIONARY (10th ed. 2014) ...................18

*http://www.meriamwebster.com/dictionary/condition* ...............................18

RESTATEMENT OF CONTRACTS § 599 (1932) ....................................................11

Steven Plitt, et al, 6 COUCH ON INSURANCE §§ 81:19, 81:20 & 81:22
    (3d ed. 2015) ........................................................................................19

**I.      The District Court Erred in Dismissing Graham's Breach of Contract Cause of Action.**

Without differentiating Graham's breach of contract cause of action from his other causes of action, the District Court dismissed them all on two grounds: (1) that their injury element depended upon the voidness of the Policies, and Arkansas law did not make the Policies void; and (2) limitations bars them because they accrued when Graham first began making payments on the Policies in 2000 or 2001.  Joint Appendix ("J.A.") 641-42.  Neither of these holdings conceivably applies to Graham's breach of contract cause of action.

Initially, as to limitations, Graham pleads that Appellees breached the Policies as of December 31, 2014, by wrongfully cancelling them **after** Graham originally filed this suit on October 6, 2014.  First Amended Complaint ("FAC") ¶¶ 50-51 & 113-18; J.A. 192-3 & 207.  Limitations cannot bar a claim which accrued *after* the plaintiff filed suit.

As to the holding that Graham suffered no injury because the Policies were not void, the breach of contract claim obviously does not depend upon the Policies being void.  To the contrary, it is based on them being valid and Appellees having breached them.  So, the District Court erred by holding that Graham did not suffer injury from Appellees' breach of contract.

Recognizing this, Appellees attempt to defend the dismissal on grounds not ruled upon by the District Court.  Initially, they claim that Graham failed to plead

breach of the Policies because: (1) Graham failed to identify any obligation on the part of Appellees not to cancel the Policies, and (2) a description of coverage attached to Virginia Surety's briefing (J.A. 324-339) proves that Appellees had the right to cancel the Policies at any time.  Joint Brief of Appellees ("Appellees' Brief") at 57.  Both arguments fail.

As to the first ground, the law provides that neither party to an insurance policy may cancel it absent either a provision specifically granting such right or consent of both parties.  *Copley v. Pekin Ins. Co.*, 488 N.E.2d 1004, 1008 (Ill. 1986) ("[I]nsurance policies, like other contracts, may be canceled only in accordance with the terms of the insurance contract, or through the mutual consent of the insurer and the insured.  The weight of modern authority is in accord."); 43 AM. JUR. 2D *Insurance* § 397 (2016) ("An insurance policy, being a contract between an insurer and an insured party, may be canceled only in accordance with the terms of the contract or through the mutual consent of the insurer and the insured.").

Perhaps recognizing this law, Appellees next argue that they "had an explicit contractual right to cancel the Policy and exercised that right."  Appellees' Brief at 57 (citing to J.A. 339, the last page of a description of coverage for a National Union policy).  However, for the reasons stated in the Brief of Appellant ("Brief")

at 32-33, the Court cannot consider that description of coverage at the motion to dismiss stage because it is not attached to or definitely referred to in the FAC.

Furthermore, even if considered, the so-called description of coverage is not determinative of Graham's breach of contract cause of action for two reasons. First, Graham alleges he had Disability Coverage under a Policy issued by Stonebridge (FAC ¶¶ 41(h), 50, 58, 62, 94 & 101; J.A. 190, 192-194, 196, 203 & 204), not National Union,[1] so the National Union description of coverage in no way evidences that Stonebridge had the right under its policy to cancel Graham's Disability Coverage. Second, under Arkansas law, an insurer only has the right to cancel a policy when the policy provides such right and the cancelation is exercised as provided in the policy. *Commercial Union Fire Ins. Co. v. King*, 156 S.W. 445, 447 (Ark. 1913). So, even if the National Union description of coverage could somehow constitute evidence that the Stonebridge Policy contained any right of cancelation (it cannot), it undoubtedly provides no evidence that Stonebridge properly exercised such cancelation right.

As to the second ground, Appellees argue that Graham's allegation in FAC ¶ 117 (J.A. 207) that he had been "harmed" is conclusory and, thus, insufficient (Appellees' Brief at 57), which ignores that Graham pled he had been harmed by

---

[1] Graham has not even named National Union as a defendant in this action. *See* FAC ¶¶ 1-9; J.A. 175-179.

3

paying premiums for the wrongfully canceled Policies.  FAC ¶¶ 51 & 118; J.A. 193 & 207.  It also ignores that Arkansas law prescribes both the harm suffered when an insurance policy is wrongfully canceled (the premiums paid for the policy) and the remedy for such breach (recovery of all premiums paid, plus interest).  *Mut. Relief Ass'n v. Ray*, 292 S.W. 396, 402 (Ark. 1927).

## II.  Graham Sufficiently Pleads Injury-In-Fact Under Article III as to His Unjust Enrichment and Conspiracy Causes of Action.[2]

As Appellees concede, the District Court did not address Appellees' standing argument under Rule 12(b)(1).  Appellees' Brief at 8.  Accordingly, Appellees argue lack of Article III standing as an alternative basis for dismissal. Appellees' Brief at 12-50.  Appellees' two arguments in that regard both fail.

### A.  *Appellees' straw man argument fails.*

Appellees first set up a straw man by claiming that Graham pled as his injury that if he had suffered a condition covered by the Policies, and if he had made claims against them, Appellees would have denied them.  Appellees' Brief at 13-14.  Then, Appellees defeat the straw man by noting that such a theory of injury would be too speculative to constitute injury-in-fact under Article III.  *Id.*

This argument fails because Graham has never claimed that he suffered injury in that manner.  Rather, he claims that he suffered injury because Appellees

---

[2] Graham concedes dismissal of his conversion cause of action was proper because Appellees did not exercise dominion and control over an identifiable fund of money.  Graham addressed the injury caused to him by 24 Hour's breach of contract in Section I above.

4

violated his rights under multiple Arkansas statutes (Brief at 41-44) and because Appellees collected premiums from him pursuant to illegal and *void ab initio* insurance policies.  *Id*. at 40.  Thus, the Court should reject Appellees' straw man attack.

> **B.**     *Graham sufficiently pleads Article III injury-in-fact by pleading that Appellees violated his rights under various Arkansas statutes.*

In the FAC, Graham alleges violations by Appellees of his rights under a number of Arkansas statutes, including the right to have the Policies issued only to eligible insureds.  Brief at 44.  Appellees did not dispute their violation of those rights in their 12(b)(1) motion (J.A. 276-81, 309 & 340-41), nor do they so on appeal.  Appellees' Brief at 47-48.  Nor do Appellees dispute that "[t]he actual or threatened injury required by Art. III may exist **solely** by virtue of statutes creating legal rights, the invasion of which creates standing."  *Warth v. Sullivan*, 422 U.S. 490, 500 (1975) (emphasis added).  Appellees' Brief at 47.

Rather, Appellees claim that under *Warth* the violated statutes must themselves provide causes of action in order to satisfy the prudential, not jurisdictional, component of Article III and that the Arkansas statutes they violated do not do so.  *Id*. at 47-49.  This argument misconstrues the subject matter of the relevant language in *Warth*.  In *Warth*, the statute in issue provided a cause of action and certain plaintiffs asserted standing based upon the legal rights of third parties.  422 U.S. at 509.  In that context, the Supreme Court stated that the

prudential rules of standing under Article III require consideration of "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position the right to judicial relief." *Id.* at 500. In other words, the Supreme Court asked whether the plaintiffs, who were only indirectly affected by the statute's violations, were nevertheless within the "zone of interest" protected by the statute.[3] It did not state or imply that the violated statute itself had to provide the cause of action. Crucially, in this case, Graham asserts his own rights under the Arkansas statutes, not the rights of third parties, so this prudential consideration never even arises.

C.  *Graham sufficiently pleads injury-in-fact under Article III by pleading damages in the form of premiums paid pursuant to illegal and void ab initio policies.*

Appellees do not deny that Graham has pled economic damages in the form of premiums paid pursuant to the illegal and *void ab initio* Policies or that such economic damages can constitute injury-in-fact. Appellees' Brief at 15-19. Rather, they argue that, under **Arkansas** law, the Policies are not *void ab initio* and, thus, that the premiums paid pursuant to them do not constitute injury under **Arkansas** law. *Id.* Crucially, however, because courts must avoid conflating jurisdiction and merits in considering Article III standing, the mere allegation of

---

[3] *See Bennett v. Spear*, 520 U.S. 154, 162 (1997) (explaining the then-controlling rule that a prudential requirement of Article III standing required "that a plaintiff's grievance must arguably fall within the zone of interest protected…by the statutory provision…involved in the suit.").

economic damages, regardless of the validity of the claim on the merits, serves to provide Article III standing.

As the United States Supreme Court held in *Lexmark Int'l Co. v. Static Control Components, Inc.*, allegations of economic damages like those made by Graham provide standing under Article III even where the defendant claims that no cause of action exists under the violated statute. 134 S. Ct. 1377, 1386-87 (2014) (holding Article III standing existed despite the defendants' challenge to the plaintiff's standing under the Lanham Act); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) (holding that issue of whether plaintiff who recovered monetary damages satisfied element of Title VII action did not constitute Article III jurisdiction question).

This is because "[t]he Supreme Court has repeatedly instructed that we must avoid conflating the question of whether we have subject matter jurisdiction to consider a claim with the determination of whether the plaintiff has stated a valid claim for relief." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 344 (5th Cir. 2014). Indeed, the "…question of whether or not a particular cause of action authorizes an injured plaintiff to sue is a merits question, effecting statutory standing, not a jurisdictional question effecting constitutional standing." *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008).

By arguing that Graham did not suffer injury under **Arkansas** law and, thus, did not suffer Article III injury-in-fact, Appellees put the cart before the horse. In order to avoid conflating jurisdiction and merits, this Court should hold it has Article III jurisdiction based on Graham's allegations of economic damages and then proceed to determine whether he suffered sufficient injury (if any is required) for purposes of his Arkansas unjust enrichment and conspiracy causes of action.

## III.  The Policies Are *Void Ab Initio*

Appellees do not deny that the Policies violated statutory requirements that blanket and group policies only be issued to defined eligible groups. *See* ARK. CODE ANN. §§ 23-86-101 & 23-86-106(2)(A)(iii).  Rather, they argue that Arkansas law did not render the Policies void because: (1) Arkansas law does not render void insurance policies that violate the insurance code unless the code expressly so states, and (2) even if the Policies would otherwise be void, ARK. CODE ANN. § 23-79-118 (the "Savings Statute") saves them from that fate. Appellees' Brief at 15-47.  Both arguments fail.

### A.  *Absent the Savings Statute, Arkansas law would render the Policies void ab initio.*

"It seems to be the rule of universal application that any contract prohibited by a constitutional statute is absolutely void." *Ganntt v. Ark. Power & Light Co.*, 74 S.W.2d 232, 234 (Ark. 1934).  "The general rule is that if a statute prohibits a corporation from making a contract of a certain kind, the contract is void, *even*

*though not expressly declared to be so in the statute*...." *United Order of Good Samaritans v. Mekins*, 244 S.W. 439, 440 (Ark. 1922) (emphasis added). This rule applies where an insurance policy violates the law. *Id.* (holding void an insurance policy issued to an ineligible insured); *Home Life Ins. Co. of N.Y. v. Masterson*, 21 S.W.2d 414, 417 (Ark. 1929) (holding void a life insurance policy issued to a person without an insurable interest in the life of the named insured). *Mekins* is particularly analogous because it too involved insurance issued to a legally ineligible insured, and the Arkansas Supreme Court held it *void ab initio*. 244 S.W. at 440. These authorities alone dispose of Appellees' first argument that a policy's violation of the insurance code does not render the policy void unless the code expressly so states.

Under the holdings of these cases, illegal insurance policies would be *void ab initio* regardless of whether an insured sought coverage under an illegal policy after faithful payment of premiums and the insurer defended based on illegality or sought refund of the premiums paid pursuant to the illegal policy. Courts rightly regarded the former scenario as unfair to innocent insureds seeking coverage under illegal policies, and they found ways to avoid that result, including refusing to declare void illegal policies where insureds sought coverage or by nevertheless enforcing illegal and void policies against insurers by estoppel.

For example, two Arkansas cases cited by Appellees held that: (1) it should be clear that a contract is contrary to public policy before declaring it void at the request of one who has received valuable consideration under the contract (e.g., an insurer who received premiums) and seeks to escape further performance (e.g., payment of a claim) by pleading the invalidity of its own agreement, *Ferrell v. Elkins*, 251 S.W. 380, 381 (Ark. 1923), and (2) that an insurance policy should, if possible, be construed so as not to forfeit coverage *for the insured*. *Sovereign Camp, W.O.W. v. Law*, 80 S.W.2d 50, 52 (Ark. 1935). Together, these cases stand for the proposition that an insured which has paid premiums for and then seeks coverage under a policy can recover under the policy despite a defense by an insurer that the policy is illegal and void. Simply put, at common law, courts generally refused to "allow an insurer who issued policies and collected premiums in violation of the law to avoid obligations to the detriment of innocent" consumers. *People v. United Nat'l. Life Ins. Co.*, 427 P.2d 199, 214 (Cal. 1967).

This pro-insured exception does not apply where the insured seeks to declare the policies void and recover the premiums paid pursuant to the usual rule applicable to *void ab initio* insurance policies. *Hogben v. Metro. Life Ins. Co.*, 38 A. 214, 216 (Conn. 1897) ("[B]ut she [the insured] cannot be prevented from reclaiming her money [premiums], paid under a mistake, because the defendant [insurer], if it had retained the money [premiums], might be estopped from taking

the advantage [by denying a claim] of its own wrong in causing the mistake.");

*Swartz v. John Hancock Mut. Life Ins. Co.*, 170 A. 355, 356 (Pa. 1934) ("If…the policy…is *void ab initio*….[t]he fact that the company might be estopped from denying its liability in the case of a loss does not effect the right to demand the return of the premiums paid.") (quoting 32 CORPUS JURIS § 407 at 1234); *Robinson v. Sec. Life & Annuity Co.*, 79 S.E. 681, 684 (N.C. 1913) (same). Effectively, at common law, an insured under an illegal insurance policy had the choice to either (a) pay a premium, incur a loss and collect on the policy, or (b) pay a premium, incur no loss and obtain a refund. *Latta v. Farmers County Mut. Fire Ins. Co.*, 313 S.E.2d 214, 216 (N.C. Ct. App. 1984). Because Graham seeks a refund, the Arkansas and other law set forth above dictates that the Policies should be declared void and his premiums refunded.

All seven of the cases cited in Appellees' Brief at 18 fn.3 are entirely consistent with this principle. In *Williams v. Continental Life & Accident Co.*, where the policy violated substantive Idaho insurance law provisions, the Idaho Supreme Court held that, despite the general rule that a contract prohibited by law is unenforceable, the insured could recover under the illegal policy pursuant to an exception for where the illegality is due to facts of which one party is justifiably ignorant (the insured) and the other is not (the insurer). 553 P.2d 708, 710 (Idaho 1979) (citing RESTATEMENT OF CONTRACTS § 599 (1932)). That is the case here.

Similarly, recognizing the choice that insureds have when covered by an illegal policy, the Tenth Circuit and the Texas Supreme Court held that insureds covered by policies not approved by an insurance commissioner or sold by an unlicensed company are voidable at the option of the insured (i.e., the insured can accept coverage or obtain a refund at its choice). *Markel Servs., Inc. v. Nat'l Farm Lines*, 426 F.2d 1123, 1125 (10th Cir. 1970); *Urrutia v. Decker*, 992 S.W.2d 440, 443 (Tex. 1999). Of course, if an insured chooses coverage, it must take coverage under the entire policy; it cannot argue for coverage and then ask for an endorsement or exclusion to be declared void because of the lack of filing or licensure. *Urrutia*, 992 S.W.2d at 443; *3405 Putnam Realty Corp. v. Chubb Custom Ins. Co.*, 788 N.Y.S.2d 64, 66 (N.Y. App. Div. 2005) (the illegal policy was not treated as void because the insured sought coverage under it, and the court held that the insured had to accept an unfavorable exclusion along with the rest of the policy). *Carrier v. Allstate Ins. Co.*, 702 So. 2d 367, 369 (La. App. 1997) (same).

Several of Appellees' cases also rest upon other grounds not applicable in this case: (1) that the statutes requiring filing of forms or licensure provided specific penalties other than voiding the policies, demonstrating an intent on the part of the legislatures not to void policies for such violations, and (2) that where the policies themselves were not substantively objectionable and presumably

would have been approved had they been filed or had the insurer been licensed, no violation of public policy occurred that rendered the policies void. *Cinkutis v. Confederation Life Ins. Co.*, 1990 WL 161260, at * 5-6 (E.D. Pa. Oct. 19, 1990) ("The allegation here is that the new policy is wanting in formal approval, nothing more. It is not suggested that the issued policy offends against the substantive prescription of the statute."); *3405 Putnam Realty Corp.*, 788 N.Y.S.2d at 67 (holding that an insurer's failure to comply with licensing scheme does not invalidate the insurance policy but rather subjects the insurer to specified statutory penalties); *Carrier*, 702 So. 2d at 370 (holding that "even if the form should have been submitted to the commissioner for approval, the failure to do so was not fatal to the document's validity, as it otherwise complied with all the other provisions of the insurance code….").[4]

The statutes violated by Appellees limiting the insureds to which group and blanket policies can be issued do not provide statutory penalties other than voidness, so the Court cannot infer that the Arkansas Legislature intended other penalties to apply to the exclusion of voidness. *See* ARK. CODE ANN. §§ 23-86-102 & 23-86-106. Furthermore, Arkansas law provides that its public policy is set out

---

[4] *Clayton's Auto Glass, Inc. v. First Data Corp.*, 2013 WL 5460872, at * 4 (E.D.N.Y. Sept. 30, 2013) noted that the Florida Supreme Court has adopted a rule that an insurer's failure to comply with provisions of the insurance code does not render its policies void unless the legislature specifically provided for such penalty. The Arkansas Supreme Court has adopted no such rule, nor do its prior decisions cited above give any reason to believe it would do so.

in its statutes, so any statutory violation constitutes a violation of public policy. *Wal-Mart Stores, Inc. v. Baysinger,* 812 S.W.2d 463, 467 (Ark. 1991). And, to the extent statutory requirements and public policy are not always synonymous, these statutes set out substantive requirements, the violation of which represents a violation of public policy, differentiating this case from those involving the mere failure to obtain licensure or the mere failure to file otherwise acceptable insurance policies.

More specifically, "[a] contract is against public policy [and void] if it is injurious to the interest of the public, or contravenes some established interest of society or some public statute…." *Guar. Nat'l Ins. Co. v. Denver Roller, Inc.*, 854 S.W.2d 312, 317 (Ark. 1993). Issuance of group and blanket policies to ineligible insureds not only contravenes Arkansas's statutes, but it is also injurious to the interests of the public, because those statutes are intended to make sure that such policies are vetted by organizations looking out for the interests of their members before being sold to those members. FAC ¶ 40(c); J.A. 188; *Bd of Ins. Comm'rs v. Great S. Life Ins. Co.*, 239 S.W.2d 803, 812 (Tex. 1951).

In contrast to the strong public policy concerns underlying the group and blanket insurance statutes, the statute in issue in *Francis v. Protective Life Ins. Co.*, ARK. CODE ANN. § 23-80-206(a), only sets forth requirements for the size of the font and the style, arrangement and appearance of insurance policy forms, arguably

requirements not based upon strong public policy concerns. 249 S.W.3d 828, 833 (Ark. Ct. App. 2007), *rev'd on other grounds*, 263 S.W.3d 117 (Ark. 2007). Further, as to whether a policy violating those requirements would be void in the absence of the Savings Statute, the court of appeals merely stated "Francis cites us to no case in which an Arkansas court has declared an insurance policy invalid on the basis of Ark.Code Ann. § 23-80-206(a)." *Id.* This Court should not find that "analysis" compelling.

For two reasons, the Court should also reject Appellees' argument (Appellees' Brief at 31-35) that the Arkansas Legislature's supposed selective use of express invalidity penalties in the insurance code leads to an inference that the Arkansas Legislature did not intend to make void policies violating insurance code provisions not expressly providing such penalty, as the common law would have done. First, the provisions cited by Appellees do not actually constitute express invalidity provisions that would be unnecessary if the Legislature intended, consistent with common law, for statutory violations by insurance policies to make those policies void. For example, ARK. CODE ANN. § 23-63-113, which makes a **provision** in a health benefit plan that violates the code "**void to the extent of the conflict**," actually constitutes a limitation on the common law rule of invalidity, rather than an express provision of invalidity, because at common law the violation would have voided the entire policy, not merely the illegal provision. *See*

*Bourland v. First Nat'l Bank Bldg. Co.*, 273 S.W. 681, 684 (Ark. 1922) (It is well settled that…if any part of an entire promise be illegal,…the whole contract is void. … Where the lawful and unlawful parts of a contract cannot be separated so as to enforce the one and null the other, it is an indivisible contract and therefore null and void throughout.").[5]   ARK. CODE ANN. § 23-79-144 likewise constitutes a limitation on the common law rule of invalidity, rather than a grant of invalidity, because it too makes a specific provision invalid where the common law would have made the entire policy invalid. *See id.*

ARK. CODE ANN. § 23-63-522(f)(2), which grants the Insurance Commissioner the right to void certain policies, just adds to the common law rule of voidness – that the Insurance Commissioner, as well as the insured, can pursue invalidity.   Finally, ARK. CODE ANN. § 23-79-112 merely provides insureds a free ten day look in which to return a policy for any reason, which return makes the policy void.   That also adds something that the common law rule voiding **illegal** policies did not address.   Thus, neither statute supports an inference that the Legislature did not intend for insurance code violations to render violating insurance policies void.

---

[5] In this case, the identity and ineligibility of the insureds could not be separated from the rest of the Policies, rendering them void in their entirety at common law.

Second, in Arkansas, "a statute will not be construed so as to overrule a principle of established common law, unless it is made plain by the act that such a change in the established law is intended." *Starkey Constr., Inc. v. Elcon, Inc.*, 457 S.W.2d 509, 513 (Ark. 1970). The Legislature's provision of voidness as a remedy for certain statutory violations, but not others, if it were true, does not constitute the Legislature making it plain that it intended to abrogate the common law rule that insureds could have illegal policies declared void and recover their premiums. To make it plain, the Legislature would have said that Insurance Commissioner action is the exclusive remedy for insurance code violations by insurance policies except where the code provides otherwise.

In summary, because the Policies violate the group and blanket insurance statutes, they violate public policy. Thus, Arkansas law makes them *void ab initio* at the option of Graham. And, as Appellees apparently concede, the voidness of the policies entitles Graham to a refund of the premiums that he paid. *Platt River Ins. Co. v. Baptist Health*, 2009 WL 2015102, at * 19 (E.D. Ark. 2009).

B.    *Based upon its plain language, the Savings Statute does not apply to the Policies.*

Appellees concede (Appellees' Brief at 25-35) Graham's arguments that the plain language of a statute controls under Arkansas law and that the Savings Statute plainly only applies to an insurance policy that is **otherwise valid** that contains a **condition** or **provision** that fails to comply with Arkansas law. Brief at

12-13. Facing the obvious fact that the issuance of the Policies to ineligible insureds does not constitute a condition or provision contained in a policy and that the Policies are not otherwise valid, Appellees make a meritless argument based upon a selective and misleading citation to *http://www.meriamwebster.com/dictionary/condition*. Appellees' Brief at 27. Specifically, without disclosing that they did so, Appellees claim "condition" as used in the statute means "qualification" even though that is only definition 3(a) and obviously does not apply in this context.

Definitions 1(a) and 1(c) are far more fitting in the context of an insurance policy: "a premise upon which the fulfillment of an agreement depends: STIPULATION" and "a provision making the effect of a legal instrument contingent upon an uncertain event." Similarly, BLACK'S LAW DICTIONARY defines condition as "[a] future and uncertain event on which the existence or extent of an obligation or liability depends; an uncertain act or event that triggers or negates a duty to render a promised performance." BRYAN A. GARNER, BLACK'S LAW DICTIONARY (10th ed. 2014).

Thus, in an insurance policy, a "condition" is a term which serves to define the limits of the obligation assumed by the insurer by making coverage dependent upon the occurrence of an event or action by the insured (i.e., "conditions" have to do with policy coverage, not policy issuance). *Providence Sav. Life Assur. Soc. v.*

*Reutlinger*, 25 S.W. 835, 836 (Ark. 1894); STEVEN PLITT, et al, 6 COUCH ON INSURANCE §§ 81:19, 81:20 & 81:22 (3d ed. 2015).  The identity and eligibility of the insured manifestly does not constitute such a "condition."  Indeed, the Arkansas Legislature recognized this by providing that every insurance policy must specify, among other things, "the names of the parties to the contract" and "the conditions pertaining to the insurance."  ARK. CODE ANN. § 23-79-112(b)(1) & (8).  If the name of the insured constituted a condition, the Legislature would not have needed to list it separately from the conditions in the statute.

With "condition" properly defined, it becomes clear that the plain language of the Savings Statute does not apply to the Policies.  The ineligible insureds named in the Policies do not constitute a "condition" or "provision contained in them" and the Policies are not "otherwise valid," because they were issued to ineligible insureds.

In the face of the plain language of the Savings Statute, Appellees cite three out-of-state cases where the policies were not properly filed and the courts applied savings statutes.  Appellees' Brief at 28-30 (citing *Highlands Ins. Co. v. Am. Marine Corp.*, 607 F.2d 1101, 1104 (5th Cir. 1979); *Sec. Life Ins. Co. v. Clark*, 494 S.E.2d 388, 394-95 (Ga. Ct. App. 1997), *rev'd in part sub nom.*, 509 S.E.2d 602 (Ga. 1998); and *Hill v. Agri-Risk Servs.*, 827 P.2d 904, 906 (Okla. Ct. App. 1992)).  Those cases are not persuasive because the courts applied the savings statutes

without considering whether the plain language of those savings statutes applied to the illegality of the policies resulting from the failure to file them. If they had, the results should have been different. In this case, the plain language of the Savings Statute does not apply to what makes the Policies illegal – their issuance to ineligible insureds.

C.    *If it is applicable at all to the Policies, insurers like Appellees cannot invoke the Savings Statute in defense of a suit to recover premiums paid pursuant to illegal and void policies.*

As explained above and in the Brief at 17-24, at common law in Arkansas and everywhere else, insureds could recover premiums paid pursuant to illegal and void contracts even though insurers could not defend coverage claims under those same policies. Given that Arkansas interprets a statute as continuing the common law unless the statute makes it plain that the Legislature intended otherwise, and given that insurance statutes and policies are generally construed in favor of insureds, this Court should hold that the Savings Statute only applies where an insurer seeks to escape liability under a policy based upon an illegal provision or condition contained therein and not where an insured seeks to declare such a policy void and recover the premiums paid. Simply put, it would be most anomalous to interpret the Savings Statute as changing the law in **favor of insurers** by allowing them to escape refund of premiums they collected pursuant to illegal policies when they would have been liable at common law.

D. *Alternatively, if insurers can ever invoke the Savings Statute for their benefit, they may only do so where the statutory violation can be cured, which is not true of the Policies.*

Contrary to Appellees' claim that interpreting the Savings Statute in this manner would require reading language into the Savings Statute (Appellees' Brief at 36), the plain language of the Savings Statute makes clear that it should not be applied to validate insurance policies that would otherwise be *void ab initio* under Arkansas law because they contain violations of the insurance laws that cannot be remedied. Specifically, the Savings Statute provides, in pertinent part, that: "[a]n insurance policy…that contains any condition or provision not in compliance with state law…shall be construed and applied according to the conditions and provisions that would have applied had the policy…been in full compliance with state law." ARK. CODE ANN. § 23-79-118. It is not possible in every case of illegality to apply a policy as if it were "in full compliance with state law." In those cases, the Savings Statute cannot apply or that portion of its language is rendered meaningless.

In this case, the Policies cannot be treated as if they complied with state law – as if they had been issued to eligible insureds – because they will still not have been vetted by groups having an interest to carefully inspect the Policies to make sure they represent good bargains for their members, as was intended by the group and blanket insurance statutes. This contrasts starkly with the cases cited by

Appellees where courts applied saving statutes in situations where either the insurer was not properly licensed or the insurance policies had not been filed with the appropriate authorities. In such cases, if there was nothing substantively wrong with the policies, the illegality could be cured by licensure or by appropriate filing. So, those cases are not persuasive in the context of the facts in this case.

*In re Ambassador Group, Inc. Litig.*, 1991 WL 11033784, at * 7 (E.D.N.Y. Feb. 27, 1991) supports this distinction. It held that the New York equivalent of the Savings Statute did not validate a policy that lacked required notice provisions because "an insured cannot be deemed to have received the required notice" it never received. Notably, Appellees' Brief fails to address the holding of this case.

> E.     *The other HealthExtras Scheme decisions are not persuasive.*

Appellees would have this Court follow the other HealthExtras Scheme decisions automatically as if this Court were merely the next domino to fall. However, when the Court carefully examines those decisions, it will not find them persuasive.

District courts in both California and New Jersey held that the statutory violations did not void the illegal policies based upon state court decisions that rejected voiding of policies in order to protect insureds. *Giercyk v. Nat'l Union Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 183642, at *13-14 (D.N.J. Dec. 4, 2015) (citing *Rest. Enters. v. Sussex Mut. Ins. Co.*, 243 A.2d 808 (N.J. 1968));

*Waiserman v. Nat'l Union Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 183642, at * 4-5 (C.D. Cal. Oct. 24, 2014) (citing *Medina v. Safe-Guard Prods.*, 78 Cal. Rptr. 3d 672 (Cal. Ct. App. 2008)). Unfortunately, those courts did not consider whether the rationale of the state court cases should apply where the insured did not seek coverage in the face of illegality, but rather sought to void illegal policies and obtain refunds, especially given that the common law granted insureds the right to choose either option. For that reason, the Court should not find these decisions persuasive.

Even less persuasive is *Watson v. Nat'l Union Fire Ins. Co.*, 2015 U.S. Dist. LEXIS 131094, at *23 (E.D. La. Sept. 29, 2015), where the sum total of the court's reasoning was the conclusory statement that "…the insurers would have been obligated to pay any covered claims that plaintiffs made during the policy period if plaintiffs had made such claims." Even if true, it ignores that at common law insureds had the option to choose coverage or refund.

The other three HealthExtras Scheme decisions dismissed the claims based upon savings statutes, but significant differences from this case make them equally unpersuasive. Initially, two of the cases involved much broader savings statutes that applied to policies which violated the insurance codes in any way, as opposed to only policies containing illegal conditions or provisions that are otherwise valid. This means they in no way rebut Graham's argument that the plain language of the

Savings Statute does not apply in this case.  *See Campbell v. Nat'l Union Fire Ins. Co.*, 2015 U.S. Dist. LEXIS 13202, at *30 (D.D.C. Sept. 16, 2015); *Petruzzo v. Nat'l Union Fire Ins. Co.*, 124 F. Supp. 3d 642, 652 (E.D.N.C. 2015).  And, while the Georgia savings statute in *Williams v. Nat'l Union Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 123040, at * 5-6 (N.D. Ga. Sept. 4, 2014), was substantially similar to the Savings Statute, that court failed to consider whether the plain language of that statute applied to policies that were illegal because they were issued to ineligible insureds, making it too unpersuasive.

In addition, all three courts failed to consider whether the savings statutes could be invoked by insurers defending refund suits.   And, the *Petruzzo* and *Campbell* courts failed to consider whether the savings statutes applied when the illegality was not curable.  Further, the relevant language in *Campbell* was merely dicta, and the court in *Williams* also based its decision on another paragraph in the Georgia savings statute providing that "no illegality…shall be deemed...to prohibit the insurer from retaining the pro rata earned premium on the contracts," which language does not exist in the Savings Statute.   2014 U.S. Dist. LEXIS, at *6 (quoting O.C.G.A. § 33-24-12(b)).   Indeed, the absence of such language in the Savings Statute indicates the opposite intent on the part of the Arkansas Legislature.

**IV.    Because Graham Sufficiently Pled Facts Supporting Fraudulent Concealment, the District Court Erred in Dismissing His Unjust Enrichment and Conspiracy Causes of Action Based on Limitations.**

Appellees support the dismissal of Graham's unjust enrichment and conspiracy causes of action based upon limitations on two grounds: (1) that Graham allegedly did not plead the necessary affirmative acts of fraudulent concealment, and (2) that by virtue of a National Union description of coverage not attached to or specifically referred to in the FAC, Graham should have, in the exercise of reasonable diligence, discovered his causes of action.  Appellees' Brief at 58-66.  Both arguments fail.

*A.    Graham sufficiently pled affirmative acts of fraudulent concealment.*

While Appellees did set forth below the legal requirement that fraudulent concealment be based on "some positive act of fraud," it never actually argued that Graham had failed to do so.  J.A. 314-318.  Rather, it only argued that Graham should have, in the exercise of reasonable diligence, discovered his causes of action more than three years before filing suit.  *Id.*  Accordingly, Appellees waived the argument they now make on appeal that Graham allegedly failed to plead positive acts of fraud.  *U.S. v. Lucas*, 499 F.3d 769, 785 (8th Cir. 2007).

Regardless of waiver, Graham pled two types of affirmative fraudulent concealment by Appellees: (1) representations made both before and after Graham's initial premium payments that he would receive $1 million in Disability

Coverage, despite him not actually receiving $1 million in Disability Coverage because the terms of coverage were so restrictive and contradictory and because Appellees did not intend to pay legitimate claims (FAC ¶¶ 22(b), 41(d), 47, 54, 74, 81, 88(2), 139 & 144; J.A. 181, 189, 192, 194, 199-201, 203, 210 & 211); and (2) implicitly representing that the Policies were legal under Arkansas law by representing in written communications both pre and post-sale that Graham was receiving insurance coverage and by delivering purported certificates of insurance (FAC ¶¶ 1, 22, 40(d), 41(c)-(h), 44, 47, 49, 50, 52, 58, 63, 65, 67, 74 & 94; J.A. 175, 181, 188-198 & 203). Appellees offer no explanation why these allegations do not sufficiently plead positive acts of fraudulent concealment.

B.     *Graham did not plead facts demonstrating he should have discovered his causes of action in the exercise of due diligence.*

On appeal, the only language in the FAC that Appellees cite for the proposition that Graham pled knowledge of facts that should have led him, in the exercise of reasonable diligence, to discover his causes of actions is "…the coverage description disclosed some limitations on coverage under the policy…." FAC ¶ 55; J.A. 194. That statement does not, however, concede that Graham received any description of coverage or that such coverage description disclosed that the Policy was "replete with extremely harsh, restrictive and confusing exclusions and contradictory terms and definitions which intentionally render[ed] the policy virtually worthless to purchasers." FAC ¶ 75; J.A. 200. That is what

Graham would have needed to learn in order to realize that Appellees' representations about the Policies' coverage were false and discover his resulting causes of action. Indeed, every insurance policy contains "some limitations on coverage," and discovery of same would not, therefore, cause a reasonable insured to inquire whether the policy contained coverage restrictions so stringent as to render the policy's purported coverage illusory.

Even if a vaguely pled description of coverage could be deemed at the pleading stage to have put a reasonable insured under a duty of inquiry, Graham actually pled facts supporting that such inquiry would have done no good. Specifically, he pled that Appellees only provided insureds under the HealthExtras Scheme with certificates of insurance and refused to provide copies of the actual controlling master policies. FAC §§ 56 & 69; J.A. 144 & 198.

Recognizing that FAC ¶ 55 does not serve to negate fraudulent concealment as a matter of law, Appellees also rely upon a description of coverage of a National Union policy not attached to or specifically referenced in the FAC, but rather attached to Virginia Surety's motion to dismiss as Exhibit B. J.A. 324-339. This document, standing alone, does not negate fraudulent concealment as a matter of law for four reasons.

First, for the reasons set forth in the Brief at 32-33, the Court cannot consider that document at the pleading stage. Second, that description of coverage

as to a National Union policy could not have put Graham on notice of anything about his Stonebridge Policy. Third, even if relevant, nothing in the National Union description of coverage conceivably discloses, or put Graham under a duty of reasonable diligence to discover, that the Policies were illegal or that Appellees did not intend to honor claims made under them.

Fourth, if it is relevant, and as the cases cited by Appellees demonstrate, to negate fraudulent concealment, Appellees needed to compare the misrepresentations about the Policies alleged by Graham to the contents of the National Union description of coverage and show that the description of coverage revealed contradictions between the representations and the policy terms. *See Kirby v. United Am. Ins. Co.*, 2010 U.S. Dist. LEXIS 24580, at \*13-14 (E.D. Ark. Jan. 22, 2010) (noting that "[d]ocuments in the record reveal that the written policies and discount program materials uniformly and directly contradict the representations Draper allegedly made."); *Bice v. United American Ins. Co.*, 2010 WL 2691690, at \*6 (W.D. Ark. July 6, 2010) (plaintiffs received the actual written policies which clearly contradicted the representations made to the plaintiffs). Appellees did not do that. Accordingly, fraudulent concealment makes erroneous the District Court's dismissal based on limitations.

**V. The Issuance of the *Void Ab Initio* Policies Does Not Support Dismissal of Graham's Unjust Enrichment Claim.**

Appellees claim that Appellant's unjust enrichment claim should be dismissed because the Policies were valid and enforceable and unjust enrichment does not apply where an express written contract exists. Appellees' Brief at 53-54. For the reasons set forth in the Brief at 53, to which Appellees did not respond, this argument fails.

Respectfully submitted,

/s/ Roger L. Mandel
Roger L. Mandel
Texas Bar No. 12891750
rlm@lhlaw.net
Bruce E. Bagelman
Texas Bar No. 01509700
beb@lhlaw.net
LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
Telephone:  (214) 560-2201
Telecopier:  (214) 560-2203

Aaron C. Hemmings
ahemmings@hemmingsandstevens.com
Hemmings & Stevens, P.L.L.C.
5540 McNeely Drive, Suite 202
P.O. Box 90698
Raleigh, NC 27612
Telephone:  (919) 277-0161
Telecopier:  (919) 277-0162

Joseph "Jay" H. Aughtman
jay@aughtmanlaw.com
Aughtman Law Firm, LLC
1772 Platt Place
Montgomery, AL 36117
Telephone:  (334) 215-9873
Telecopier:   (334) 213-5663

Denny Paul Petty
pettylawfirm@hotmail.com
Petty Law Firm
411 West Arch Avenue
Searcy, Arkansas 72143
Telephone: (501) 268-7161
Telecopier: (501) 268-9895

**ATTORNEYS FOR APPELLANT
AND THE CLASS**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman.

This brief has been scanned for viruses and is virus free to the best of my knowledge.

/s/ Roger L. Mandel
Attorney for Appellants
April 21, 2016

## CERTIFICATE OF SERVICE

I certify that on April 21, 2016, the foregoing document was served on all parties or their counsel of record through the Court's CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below.

/s/ Roger L. Mandel
Attorney for Appellants
April 21, 2016

Mr. Denny Paul Petty
PAUL PETTY LAW FIRM
411 W. Arch
Searcy, AR 72143-0000

Ms. Kelly Librera
WINSTON & STRAWN
200 Park Avenue
New York, NY 10166